Scileppi, J.
The chief question posed by this appeal is whether, under the particular circumstances of this case, the issuance of a parole warrant commenced a ‘ ‘ judicial proceeding ” thereby entitling the parole violator (the defendant Simons) to the presence of counsel during any interrogation by law enforcement officials.
On February 13, 1962, three men robbed a supermarket using a toy pistol. Two of the robbers were quickly apprehended and implicated the defendant Simons in the hold-up, asserting that he had been a lookout. Detective Mullen, officially assigned to investigate the robbery, visited Simons’ residence twice on the day of the felony. On both occasions the defendant was not at home. Mullen thereafter informed Simons’ parole officer that the defendant was suspected of having taken part in a robbery and was not to be found at home. On the basis of this information, a parole warrant was issued. In the meantime, Simons had, without authorization, fled the State, thereby compounding his parole violation. Fourteen months later, he surrendered himself to the parole authorities, who detained him in the Manhattan House of Detention for Men (the Tombs) from April 25, 1963 until April 29, 1963. During this time the police did not know that Simons was in custody and no one questioned him.
On April 29, Simons was removed from the Tombs by a parole officer and taken to the Parole Commission office at 320 Broadway. Detective Mullen was then called and told by Parole Officer Dunigan that the parole authorities would turn Simons *537 over to the police. Mullen and another detective came to the Parole Commission office and the parole authorities turned Simons over to them, along with the parole warrant under which he was being held.
Shortly after he was brought to the 79th Precinct, the defendant made a statement. After several more hours of questioning the District Attorney arrived and completed taking Simons ’ statement at about 6:00 p.m. At no time during the questioning was the defendant informed of his right to counsel or of his right to remain silent. Of course, under the law as it then existed, the police were under no duty to warn (People v. Gunner, 15 N Y 2d 226). The following morning Simons was taken before a Magistrate and arraigned on the robbery charge. He was indicted for robbery, first degree; grand larceny, second degree; and assault, second degree.
At the trial before Justice Leibowitz and a jury, the statements which Simons had given to the police were introduced into evidence. He was found guilty on all three counts in the indictment and was sentenced as a second felony offender. On appeal the Appellate Division, Second Department, remitted the case to the trial court for a Huntley hearing to inquire into the voluntariness of the statements made by Simons prior to his arraignment (24 A D 2d 500). In the interim, the appeal was held in abeyance. The Huntley hearing resulted in a finding of voluntariness and the Appellate Division then, by a split court, affirmed the conviction and the Huntley hearing determination. Justice Hopkins, the sole dissenter, granted leave to appeal to this court.
It is well established in this State that once the “ judicial process ” has been invoked against an accused, the right to counsel automatically attaches and any statements made in the absence of counsel are inadmissible, unless the right to counsel was effectively waived (People v. Bodie, 16 N Y 2d 275). The defendant contends that the issuance of the parole warrant commenced a judicial proceeding and, therefore, the statements that he made to the police in the absence of counsel were inadmissible. It is conceded in the defendant’s reply brief that a parole violation proceeding is not a judicial proceeding. He argues, however, that the parole warrant in this case was not issued to initiate a parole violation proceeding. “ Instead it *538 was issued for the purpose of arresting [the defendant] in connection with the robbery investigation, and it thus initiated a judicial proceeding against the defendant culminating in his trial and conviction on the robbery charge.” It seems to us that this contention lacks merit. Indeed, it suggests a Machiavellian conspiracy engaged in by the police and the parole authorities for the express purpose of depriving the defendant of his rights. Such a suggestion is simply not borne out by the record. The Huntley hearing Judge found, among others, the following facts:
“That on February 13, 1962, after having ascertained that the defendant was not at home and that his whereabouts were unknown, the detectives notified the New York State Parole Board, and more particularly the defendant’s parole officer, of the defendant’s alleged participation in’the robbery, and their ascertainment that the defendant Simons had not been home and his whereabouts were unknown.
“ That acting on the information supplied by the police, the parole officer obtained a warrant on February 13, 1962, and that said warrant was predicated on the information and belief by the Parole Board that the defendant had or was about to return to his previous criminal activities, and also that he had left home without notification to the Parole Board ” (emphasis supplied).
While it is true that a parole officer did not visit Simons’ home until February 14,1962, the day after receiving the information from the police, it is clear that under the law the warrant was properly issued and was not issued merely to aid the police and save them the trouble of obtaining their own arrest warrant. Section 216 of the Correction Law provides: ‘ ‘ Violation of parole. If the parole officer having charge of a paroled prisoner or a prisoner received under the uniform act for out-of-state parolee supervision shall have reasonable cause to believe that such prisoner has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect, such parole officer shall report such fact to a member of the board of parole or to any officer of the division of parole designated by such board, who thereupon may issue a warrant for the retaking of such prisoner and for his temporary detention or return to a designated prison ” (emphasis supplied).
*539 Thus, under this section the information supplied by the police gave the parole authorities reasonable cause to believe that the defendant had violated his parole in two important respects: he had lapsed into criminal ways and had left home without notifying the Parole Board. The warrant was not issued for the purpose of arresting the defendant in connection with the robbery. Having had reasonable cause to believe that the defendant had violated his parole, the parole authorities had the right, indeed the duty, to issue a warrant for his apprehension so that the Parole Board could take appropriate action with respect to Simons’ violation of parole.
In sum, since the parole warrant in this case was properly issued, since it was not issued for the purpose of arresting the defendant on the robbery charge, we hold that its issuance did not commence a judicial proceeding.
We note, however, that even if we were to hold that a parole revocation proceeding is judicial in nature and, therefore, the issuance of the parole warrant commenced a judicial proceeding, it would not avail the defendant.
It is manifest under our holding in People v. Stanley (15 N Y 2d 30) that the police would nevertheless have had the right to question Simons on the robbery charge, in the absence of counsel. Chief (then) Judge Fuld, speaking for the court, said: “ However, as the language of the cases makes clear, the mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime —'Upon which he has been neither arraigned nor indicted—or render inadmissible a confession or other inculpatory statement obtained as a result of such questioning * * *. The reason is clear. With regard to the second crime about which the defendant is questioned, there has not yet been ‘ the formal commencement of the criminal action ’ against him ” (People v. Stanley, supra, pp. 32-33).
Of course, in Stanley, unlike the present case, the arraignment took place on a Federal charge, but (then) Judge Fuld’s sweeping language makes clear that the decision did not turn on this fact. Nor is the present case distinguishable from Stanley on the ground that parole violation charge in part and the robbery charge stem from the same facts. Chief Judge Desmond, in his *540 dissent in Stanley (p. 33), noted that “ the F. B. I. investigation and the Federal indictment were concerned with transporting money, an element or ingredient of the same alleged money theft charged in the present State prosecution ”.
Thus, the fact that .the charges in Stanley, as in the present case, were ‘1 interwoven ’ ’ was not considered by this court to prevent questioning in the absence of counsel on one charge although the “ judicial process ” had previously commenced on the other.
The defendant next contends that it was reversible error for the Trial Judge to refuse to consider himself, and fail to charge the jury to consider, the effect of the illegal delay in arraignment and unlawful detention on the voluntariness of his statements. There are several answers to this contention. Firstly, the defendant was not unlawfully detained during the time he was held in the Tombs by the parole authorities. He was being held under a lawfully executed parole warrant and as a matter of law the parole authorities had the right to keep him in custody. Section 216 of the Correction Law provides that, if there is reasonable cause to believe that a prisoner has violated parole, a warrant may ‘ ‘ issue * * * for the retaking of such prisoner and for his temporary detention or return to a designated prison * * *. Such warrant shall constitute sufficient authority to the peace officer to whom it is issued and to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is exhibited to hold in temporary custody the prisoner retaken pursuant thereto ” (emphasis added). And section 217 of the Correction Law further provides: ‘ ‘ Betaking of a violator of parole. Any parole officer, or any officer authorized to serve criminal process, or any peace officer to whom such warrant shall be delivered is authorized and required to execute such warrant by taking such prisoner and having him detained or returning him to the prison designated by the commissioner of correction, to be held to await the action of the board of parole.”
Secondly, there was no illegal delay in arraignment. Contrary to appellant’s assertion, he was not being held in the name of the Parole Commission on behalf of the Police Department for his alleged role in the robbery. He was lawfully being held because he violated his parole. The police did not know that *541 he was in custody until the day the parole authorities decided to turn Simons over to them for questioning. Since it cannot be said as a matter of law or fact that he was being held on the robbery charge, Simons had no right to an arraignment and, therefore, there could not be an illegal delay in arraignment. Lastly, we note that there was no request to charge the jury with respect to the four-day delay, nor did Simons’ trial counsel specifically urge it as a factor to be considered relating to the voluntariness of the confession. On the contrary, the sole request to charge relating thereto pertained to the time commencing with defendant’s transfer of custody from the parole officer to .the police, and the court did so duly charge.
The absence of an exception or request for further instruction upon which an exception could be predicated bars review by this court (Code Crim. Pro., § 420-a; People v. Feld, 305 N. Y. 322; People v. Adams, 21 N Y 2d 397).
In bis charge to the jury, the Trial Judge said: “ The law doesn’t say that before a man’s confession can be taken he must be told, ‘ You have a right to a lawyer. * * * You don’t have to say anything, if you don’t want to and anything you say will be used against you.’ There is no such law in the State of New York.” Simons contends that this charge resulted in reversible error because it did not allow the jury to consider the effect of the failure of the parole authorities and the assistant district attorney to warn the defendant that he had the right to counsel and the right to remain silent on the voluntariness of his statements. Under the law in effect at the time of the trial, this charge was correct (see People v. Gunner, 15 N Y 2d 226, supra). Moreover, there was no objection or exception to this charge and no request was made to charge differently. Thus, the question was not saved for review.
Simons finally argues that his statements should be held inadmissible because they were procured as a result of acts by law enforcement officials which deprived him of his constitutional right to the equal protection of the laws. Specifically, he contends that the parole violation was used to deprive bim of a speedy arraignment on the robbery charge and, had he not been a parolee, he would have been arraigned immediately. We find no merit to this contention for, as noted earlier, we are of the opinion that there was no delay in arraignment. Simons was *542 clearly in violation of his parole. He voluntarily surrendered himself to the Parole Board after he had absented himself from the State for 14 months, and under the Correction Law the parole authorities had the right to detain him until they decided to proceed with the parole violation proceeding or turn Simons over to the police for questioning on the robbery charge. Where there is an outstanding criminal charge against a parolee, it might be a better practice for the parole authorities to turn the accused over to the police sooner than was done in this case, but in our opinion the procedure followed herein did not deprive the defendant of equal protection of the laws.
Accordingly, the judgment appealed from should be affirmed.