Gabrielli, J.
(dissenting). By a bare majority, the Appellate Division has overturned defendant’s murder conviction. I dissent from an affirmance of the order below and vote to sustain the conviction. Because we are here concerned with pure questions of law, it is unnecessary to detail the events leading to the homicide, to which defendant confessed. The sole issue presented is whether his questioning was proper in all the circumstances. No issue is created and there is no question concerning the proper giving of the Miranda warnings and rights.
When the defendant William Ermo was first accused of assaulting a young schoolgirl on March 13, 1972 no one suspected that he was involved in the murder of another girl, Ursula Shiba, some seven months before. Indeed there was no relationship between the assault and the homicide to cause any suspicion. The victims were unrelated, the crimes were months apart, the methods of committing them were very different, and, indeed, only the proximity of the defendant’s address to that of the homicide victim caused the police to even question him about the murder. Nevertheless, the majority relies on the fact that "questions with respect to the two offenses were [so] interwoven” as to invalidate the defendant’s waiver of counsel on the homicide charge and suppress the confession.
This flies in the face of the rule that this court has .consistently followed since we first recognized the so-called Donovan-Arthur rule (see People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325). We have, until today, always held that a defendant may waive counsel without having an attorney present although he is represented by counsel on an entirely unrelated pending charge (see, e.g., People v Stanley, 15 NY2d 30; People v Simons, 22 NY2d 533; People v Hetherington, 27 NY2d 242; People v Taylor, 27 NY2d 327; People v Clark, 41 NY2d 612; People v Coleman, 43 NY2d 222).
As we said in the earlier cases, "the mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime — upon which he has been neither arraigned nor indicted — or render inadmissible a confession or other inculpatory statement obtained as a result of such questioning. * * * *867 The reason is clear. With regard to the second crime about which the defendant is questioned, there has not yet been 'the formal commencement of the criminal action’ against him” (People v Simons, supra, p 539; People v Stanley, supra, pp 32-33). The rule was continued and refined in People v Taylor (supra). There a unanimous court stated that the rule precluding a defendant from waiving his right to have an attorney present in the absence of that attorney "does not obtain unless and until the police or prosecutor learn that an attorney has been secured to assist the accused in defending against the speciñc charges for which he is held” (27 NY2d 327, 332, supra; emphasis in original). Where, as here, the charge on which a defendant is being questioned differs from the charge for which he has an attorney there is no legal impediment to questioning him on the former charge even in the absence of an attorney.
This does not mean that the police may accuse someone of a crime as a mere "sham” or a pretext for holding the defendant in connection with the investigation of another crime (People v Taylor, 27 NY2d 327, 331, supra; see, also, People v Vella, 21 NY2d 249). Such a simple ruse to avoid the rules concerning waiver would make the protection of cases such as People v Arthur (22 NY2d 325, supra) and People v Hobson (39 NY2d 479) useless. But in the absence of such conduct the questioning is permitted so long as the proceeding in which the defendant is represented by counsel is unrelated to the charge on which he is being questioned (People v Coleman, 43 NY2d 222, 226, supra).
This is not to say that every slight relationship between the two crimes requires suppression. For example, in People v Taylor (supra), the defendants were incarcerated on a robbery charge when, due to the similarity of that crime to an unsolved robbery-murder, the police questioned one of the defendants, who subsequently confessed. Although undeniably the crimes were similar, and in fact were so similar that the modus operandi of one led to the solution of the other, the crimes were not related in the sense that would require suppression.
Nor are the crimes involved here more closely related than those in Taylor. In fact, Detective Chickering, who first questioned the defendant about the murder, stated that he did so because of the proximity of the defendant’s address to that of the murder victim. Even if, as hypothesized by the Appellate *868 Division, the sexual nature of the assault led the police to suspect that the defendant was involved in the murder, that would be the sole link between the two crimes, and, as in People v Taylor (supra) the mere fact that the crimes were similarly committed would not render the confessions inadmissible.
There is, of course, another situation where the police are not permitted to interrogate a suspect absent his lawyer’s presence. This occurs when the suspect’s attorney has communicated to the police that he will not permit them to interrogate his client (see People v Carl, 46 NY2d 806; People v Ramos, 40 NY2d 610). Obviously, in that situation it makes no difference that the crimes are unrelated, because once a lawyer has informed the police that they are not to interrogate his client he is entitled to have those wishes respected (see People v Byrne, 47 NY2d 117). But since there is no evidence or any indication whatsoever that the defendant’s lawyer communicated with the police in any such manner, those cases are inapplicable as well.
Thus, in the final analysis the result reached by the majority is not in accord with any of the prior cases dealing with this area of the law. It apparently establishes a new standard, whereby the determinative factor becomes whether the questions regarding two crimes are "interwoven”, and not whether the crimes themselves are related. No explanation is given for this change, and the cases do not support it.
This court in an unanimous opinion stated with unmistakable clarity in People v Clark (41 NY2d 612, 615, supra) that: "Representation by counsel in a proceeding unrelated to the investigation is insufficient to invoke” the rule that a person may not be interrogated after a lawyer has entered another proceeding in which he is represented by counsel; and I find it impossible to accept the rationalization of the majority that the case of People v Coleman (43 NY2d 222, 224, supra) stands as authority for their position. There, after being brought from prison where he was being held on "an unrelated charge”, Coleman was subjected to a lineup. This court framed the issue presented as follows: "We are asked to pass on the question of whether a defendant, incarcerated pending trial on a charge for which he was represented by counsel, may waive, in the absence of an attorney, his right to counsel at a lineup, held in an unrelated investigation, in which his presence was secured pursuant to a court order of removal”. This court *869 resolved that issue by stating that: “Today we reach this question and decide that the right to counsel may be waived notwithstanding the absence of counsel whom a defendant had retained with respect to a wholly unrelated charge” (p 226).
By their holding today, the majority, with one fell swoop, is disavowing and overruling well-established precedents which have been founded on logic, law, reason and justice. Those, to name but a few which have formed the -bulwark of stare decisis in this sensitive area of law, are: People v Stanley (15 NY2d 30 [Nov. 25, 1964], supra); People v Simons (22 NY2d 533 [July 2, 1968], supra); People v Hetherington (27 NY2d 243 [Nov. 18, 1970], supra); People v Taylor (27 NY2d 327 [Jan. 6, 1971], supra); People v Clark (41 NY2d 612 [April 7, 1977], supra); and People v Coleman (43 NY2d 222 [Nov. 22, 1977], supra).
For all these reasons, I respectfully dissent and vote to reverse.
Chief Judge Cooke and Judges Jones, Wachtler and Fuchsberg concur; Judge Jasen concurs in result in a separate memorandum; Judge Gabrielli dissents and votes to reverse in another opinion.
Order affirmed in a memorandum.