**UNITED STATES of America, Appellee,**

v.

**Charles David VICKERS, Appellant.**

**No. 11383.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1967.

Decided Dec. 18, 1967.

704

Nelson Woodson, Salisbury, N. C. (Court-appointed counsel), for appellant.

William H. Murdock, U. S. Atty. (Richard M. Dailey, Jr., Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

Caught in possession of money recently pilfered from the United States mails within his reach and control as a postal employee, Charles David Vickers urges that the Fourth Amendment voids his conviction. No question of the sufficiency of the evidence is presented to us, but only the question—recurring and difficult—of whether highly incriminating evidence should have been excluded because obtained by an unreasonable search and seizure. On the facts of this case we think there was no violation of Vickers' constitutional rights and affirm.

Vickers was employed by the United States Post Office in Salisbury, North Carolina, to sort, cancel, and distribute mail. In late January 1967, based on numerous complaints concerning missing local and incoming mail, Post Office Inspector T. L. Wood conducted an investigation. When the investigation produced only one suspect, Vickers, test letters containing treasury notes were prepared; one was mailed in such a manner as to pass through Vickers' hands, and the other was placed on a ledge near Vickers' work place.[1] Neither letter reached its addressee. On February 1, two days after the first letter was mailed and eight hours after the second was placed on the ledge, Wood and Postal Inspector Dollings asked Vickers to accompany them to the Inspector's office in the Post Office Building. The government's version of the facts is that at this point Vickers was told that an investigation was in process and asked if he had any personal knowledge of the missing mail. When Vickers replied that he did not, he was asked if he had any objection to showing the inspectors what was in his pockets; Vickers said that he had no objections and emptied his pockets. The version of the facts offered by Vickers is that, upon reaching the office, he was immediately told to empty his pockets; when he asked for an explanation, he was told, "Never mind, just put everything out." The inspectors immediately identified currency and coins in Vickers' pockets as the money that had been placed in the test letters. They arrested Vickers and he was later convicted under 18 U.S.C. § 1709 and given a 15-month sentence under 18 U.S.C. § 4208(a) (2).[2]

The determination of guilt depended upon the admissibility of the marked money. Without the money the government conceded the evidence would be insufficient to establish guilt. Yet Vickers, represented by able counsel, ignored Fed.R.Crim.P. 41(e) and Local Rule 29 [3] and filed no motion to suppress. After the trial had begun, objection to

---

1. The employee selected by the Post Office inspectors to place the second letter near Vickers testified that only he and Vickers had access to it and that he did not handle the letter again after placing it where Vickers would see it.

2. This case is presented to us, as it was in the court below, on the assumption that it is governed by application of the ordinary rules of search and seizure. We decide it on that basis. The goverment has not asked that we consider whether Vickers' status as a postal employee and the government's legitimate and proprietary interest in the protection of the mails may entitle the government to use investigative techniques not available to it in the ordinary situation. During oral argument in our court the question was raised for the first time whether the government acting in its proprietary capacity, could reasonably and constitutionally require of its postal employees, as a condition of employment, consent to search for missing mail. We express no opinion. See Willie & Catlin, Shakedown—Main Gate Searches of Departing Civilians, 21 JAG J. 132 (1967).

3. "The motion shall be made before trial or hearing unless opportunity therefore did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Fed.R.Crim.P. 41(e).
   "MOTIONS IN CRIMINAL CASES. Unless a different time is fixed by statute or the Federal Rules of Criminal Procedure, motions in criminal cases, and particularly motions made pursuant to Rules 7(f), 12, 16, 21 and 41(e), Federal Rules of Criminal Procedure, shall be in writing and state with particularity the grounds therefor and the relief or order sought.

the evidence was made for the first time on the ground that it had been obtained in violation of the Constitution. No excuse was offered for the delay, but commendably the United States Attorney agreed that the court, in its discretion, might consider the objection as a motion to suppress.

It is well settled that a "search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied." Channel v. United States, 285 F.2d 217, 219 (9th Cir. 1960). E. g. United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962). Whether consent was voluntarily and intelligently given is a question of fact as to which the government has the burden of proof. E. g., Wren v. United States, 352 F.2d 617 (10th Cir. 1965). Ample evidence was offered to sustain the burden and the issue of credibility was resolved in favor of the government and against the defendant.

The district judge accorded Vickers a full hearing in the course of the trial—permitting him to testify with respect to the motion to suppress without subjecting himself to cross-examination on matters relevant to guilt or innocence. This procedure was adopted at Vickers' request and at his insistence and over the objection of the United States Attorney, who preferred a postponement of the trial and a separate consideration of the motion to suppress. After hearing all the evidence relating to the motion to suppress, the district judge heard arguments of counsel, considered the matter during an adjournment of the court, and then orally denied the motion. He found no facts. He was not requested to do so. Neither statute, rule, nor case law requires findings of fact on such a motion, although it has been said to be the better practice to do so when findings are requested and it appears an appeal is likely. United States v. Llanes, 357 F.2d 119 (2d Cir. 1966).

We think the district judge's denial of the motion amounts to an adoption of the facts to which the postal inspectors testified.[4] The testimony of the Post Office inspectors was clear, positive, and convincing. United States v. Smith, supra, 308 F.2d at 663; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951). The finding of a consent search from such testimony does not seem to us to be clearly erroneous and must be accepted on appeal. Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862, 864–865 (1965); Wren v. United States, supra, 352 F.2d at 619. We cannot agree with Vickers' contention that the only permissible inference was that he had unwillingly submitted to authority. This is not a case such as Pekar v. United States where the defendant's initial resistance was overcome by an "aura of officialdom." 315 F.2d 319 (5th Cir. 1963). The only factor here to suggest compulsion is that the disclosure was made in the privacy of the investigator's office with only the two investigators and the defendant

All such motions shall be filed with the clerk, and a copy served upon the United States attorney, at least five days prior to the date of arraignment, and accompanied by a brief citing all authorities upon which the movant relies. The court may, however, in unusual or exceptional circumstances, and for good cause shown, allow such motions to be made at a time later than that fixed by this rule." Rules of Practice and Procedure, Middle District of North Carolina, Rule 29 (eff. Sept. 30, 1965).

4. During oral argument to the district judge the United States Attorney stated to the court: "The government is contending, if the court pleases, that this was a consent search, period." In its brief in this court, the government, perhaps over-generously, concedes that there was no probable cause for a search. We accept the concession, arguendo, without being convinced of its necessity, noting that the Post Office inspector was apparently willing to explain why Vickers was the only "suspect" but was prevented from doing so by objections to the evidence.

present. It may be true that "there is a coercive effect inherently produced when several police officers, with their uniforms and accompanying paraphernalia, confront a suspect and ask for permission to search [but to] sustain such a claim * * *, absent any coercive words or acts by the police, would preclude a voluntary consent to search whenever more than one armed police officer confronts a suspect * *. We refuse to so hold." United States v. Thompson, 356 F.2d 216, 220 (2d Cir. 1965).

■ We also think the facts reasonably support an inference that Vickers' consent was not unintelligent. Intelligent consent does not mean that with hindsight the acquiescence must be deemed wise. In the context of this case it means only that Vickers understood that he was being *asked* rather than *ordered* to disclose the contents of his pockets. The difference is reflected in the conflicting testimony below—resolved against the defendant. Intelligent decisions are sometimes wrong decisions. Perhaps it seemed to Vickers that exculpation was within his grasp. He knew that he had no stolen letters or envelopes on his person. Since the test letters used actual names of customers of finance companies, it probably did not occur to him that money taken from them would be marked and identifiable. Certainly the district judge could properly infer that Vickers freely and intelligently consented to disclose what he had on his person in the confident belief that he possessed nothing that would incriminate him. See United States v. Vita, 294 F.2d 524, 529 (2d Cir. 1961); United States v. Bonanno, 180 F.Supp. 71, 84 (S.D. N.Y.1960). Vickers "need not have had a positive desire that the search be conducted in order for his consent to have

been voluntary and effective." United States v. Thompson, supra, 356 F.2d at 220. Consent searches have often been upheld where a defendant was unaware that a search would produce evidence against him. United States v. Simpson, 353 F.2d 530 (2d Cir. 1965); United States v. Dornblut, 261 F.2d 949 (2d Cir. 1958); see also, Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954). But see, United States v. Blalock, 255 F.Supp. 268 (E.D.Pa.1966).

■ We find no merit in Vickers' contention that his rights under the Fifth and Sixth Amendments have been violated. The product of this search was marked money and the Supreme Court has recently reaffirmed its position that the Fifth Amendment "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." United States v. Wade, 388 U.S. 218, 221, 87 S.Ct. 1926, 1929, 18 L.Ed.2d 1149, 1154 (1967) (quoting Schmerber v. State of California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Marked money is not "testimonial or communicative" matter. See also, Gilbert v. State of California, 388 U.S. 263, 265–266, 87 S.Ct. 1951, 18 L.Ed.2d 1178, 1182–1183 (1967). Nor do we think that the investigation had reached such a critical stage at the time of the consent search that the presence of counsel was then necessary "to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." United States v. Wade, supra, 388 U.S. at 227, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157.[5]

Affirmed.

---

5. It is to be noted that the government offered into evidence no statement attributable to the defendant and, indeed, took the position at trial that the defendant "never made any incriminating statement at all" from the time the investigation was started "until this good hour." On cross-exmination of one of the Post Office inspectors, counsel for defendant brought out that defendant had told the Post Office inspectors that he "found the money in an alley."