Douglas P. Young, J.
This hearing was scheduled as a suppression hearing concerning evidence obtained by the People consisting of the notations placed on the defendant’s “claimant’s insurance hook ”, and the checks listed on People’s Exhibit 3 in evidence, i.e., the identification initials placed thereon by the defendant at the interview. By stipulation it was agreed that the hearing would also constitute a Huntley-Miranda hearing on the admissibility of the oral and written statements made by the defendant and that a determination on the statements would result in a determination as to the admissibility in evidence of the tangible items.
The defendant is charged with a violation of the Labor Law in that he wrongfully received unemployment benefits while he was actually employed.
I find the facts to be that defendant received a letter from the New York State Department of Labor requesting that he come to the office of the department in Freeport for an interview. This is the office where defendant had received the payments *265 in question. He requested a change in the date of the appointment over the telephone and he received a call from Mr. Stern, a special agent in the office of the counsel of the Labor Department, and an appointment was arranged. Mr. Stern advised the defendant by telephone that he did not wish to discuss the matter over the phone. Defendant (as he testified) was aware his acceptance of payments was improper.
The defendant called at the office of the department on November 13, 1967. There was conflicting testimony as to whether he was kept waiting for a period of over an hour and 10 minutes. I find that after a short wait defendant was invited to come into an interior office where he met Mr. Stern and Mr. Warlow another agent of the department. A number of questions were posed at the hearing about the appearance and atmosphere of this office, apparently in an effort to show that it had a forbidding appearance which would frighten and cow an average citizen. I find that the room was an average or fair-sized office about 10 feet by 15 feet in dimensions with windows opening onto a parking lot. The blinds in the windows were closed and the room was lighted by electric light and contained a desk and three chairs.
After introductions were made the defendant was informed by Mr. Warlow that someone was collecting unemployment insurance under his name and he was asked to verify whether the signatures on the receipt card were his. Defendant stated that these were his signatures and he initialed them to indicate his identification. He also identified his signature on the checks paid out. Defendant was then informed by one of the agents that he was in trouble as they had obtained a statement from his employer showing that he had been employed during the period he had been collecting unemployment benefits. Defendant was told that it would be to his advantage to repay the money. He stated that the only way he could do it was to sell his house. Three written statements were taken from the defendant. The defendant signed these after being sworn by Mr. Stern. Mr. Accavallo said that he would sell his house by February and one of the agents said that he would check with his boss and see what he could do.
The defendant was not advised of his rights, as required by the Miranda decision (384 U. S. 436) or otherwise.
The threshold question which has been presented is whether the Miranda decision applies to a situation where the governmental officers eliciting the statements from the defendant are not peace officers as specified in New York State statute. The designation of these governmental agents as peace officers *266 would not affect the situation. If it were otherwise New York State could select which of its agents it could drop from the classification of peace officer and use those officers to elicit statements by unconstitutional means. Therefore, we must be governed by the realities of the situation. The realities are that these officers are agents of the State of New York; their function is to obtain information from the witnesses or suspects which may be used in the prosecution of a person who has wrongfully received unemployment payments. This being so, they are not exempted from the Miranda rule simply because they are not peace officers.
Do these agents have any other special status which bears on their right to take statements 1 There is little in the way of reported decisions concerning interrogation by agents of the State or its local subdivisions, other than police officers. There is a considerable body of precedent in the Federal reports concerning the application of Escobedo v. Illinois (378 U. S. 478) and Miranda (384 U. S. 436) to investigations by employees of the Internal Revenue Service, particularly in income tax investigations. In the recent case of Mathis v. United States (391 U. S. 1), the United States Supreme Court held that a statement given to a Federal income tax agent would be inadmissible by reason of its having been taken under custodial conditions. Therefore, it is established that the “ custodial question ” is involved when an interrogation is conducted by such an agent.
Are these agents of the State Department of Labor the counterparts or the equivalents of investigators employed by the Internal Revenue Service ? I find that the agents in this case are in a category equivalent to an income tax investigator, so far as the defendant is concerned. They are engaged in seeking information which could be used to convict him of a crime. Having so decided it then follows that if the circumstances show the interrogation to be custodial in nature the Miranda warnings would be required.
The defendant had frequently been in the office of the Department of Labor in Freeport. He had never been in the manager’s office, where this interview took place. He was confronted by two agents of the State. These men did not have weapons. They are not menacing in appearance. The office was the ordinary drab room; it was not prison-like in appearance. Efforts to build this locale into a forbidding, threatening surrounding are not convincing. I believe that the fear which defendant testified he felt arose from his fear of unpleasant *267 consequences rather than from the external physical circumstances or from any intimidation.
Of the many Federal cases dealing with income tax investigations the great majority hold that such investigations are not usually custodial in character. (Frohmann v. United States, 380 F. 2d 832 [C. A. 8th, 1967] and cases cited at p. 836.) Of course, many of them are conducted at the taxpayer’s premises, which presents a different factual situation. In at least two cases it was held that an interview in the office of the agent is not custodial in nature. (Spinney v. United States, 385 F. 2d 908 [C. A. 1st, 1967]; Morgan v. United States, 377 F. 2d 507 [C. A. 1st, 1967]; cf. United States v. Turzynski, 268 F. Supp. 847 [U. S. Dist. Ct., N. D. Ill., 1967].)
There is a troublesome difference in the facts here from those in the usual tax investigation. Here there was no question of this being a civil investigation as opposed to a criminal investigation. The identity of the perpetrator was not really in issue and the interrogation was actually for the purpose of getting evidence to use in the prosecution. In such a case it is difficult to equate the rights of the citizen to counsel and against self incrimination, as opposed to his duty to co-operate with the government.
One view is that stated in Morgan (supra, p. 508): “ There must be reasonable limits to the solicitude required by the government. * * * But to say that a government agency must be prepared to suggest, and perhaps supply, counsel at every turn that it asks questions of someone * * * we think goes far beyond any principle of fundamental fairness ”.
On the other hand writers on the subject have long recommended that warnings be given when a case takes on the complexion of a criminal investigation (e.g., “ Exercise of the Privilege Against Self-Incrimination by Witnesses and Codefendants : The Effect Upon the Accused ’ ’, 33 Univ. of Chicago L. Rev., p. 151 [1965-66]: “ Constitutional Rights of a Taxpayer in a Criminal Tax Investigation ’ ’, N. Y. L. J., April 26, 29, 30, 1968).
Agents are now, it appears, instructed to give warnings to taxpayers in income tax investigations. (United States v. Jaskiewicz, 278 F. Supp. 525, 534 [U. S. Dist. Ct., E. D. Pa., 1968].)
I find that the situation was not custodial in character. As a conclusion of law, I find that Miranda does not apply. It may be that many persons would feel that fair play would call for the defendant to be given warnings of his rights before he was caused to provide evidence against himself. I would agree with *268 the authors of the articles cited above that such a practice would be desirable. However, I find in the circumstances of this case that the giving of such warnings is not mandated by the precedents now existing.
I also find that the statements were voluntary by traditional standards. Defendant did not have a lawyer. He made no request for a lawyer. The “ defendant stage ” had not commenced. Under present controlling law the investigation had not reached such a “ critical stage ” as to invoke the protection of the Sixth Amendment to the United States Constitution to mandate the presence of counsel. (United States v. Vickers, 387 F. 2d 703 [C. A. 4th, 1967].)
Defendant also raised a question as to some promises being made to defendant by the officers if he would make restitution. This issue was not clearly articulated and I understand it has been abandoned by defendant. In any event, I find as a fact that no promises were made to defendant and thus that this is not an issue for consideration.
Upon the foregoing, it is ordered that the oral and written statements made by defendant are admissible on the trial and that defendant’s motion to suppress the evidence is denied in all respects.