Lynn PORTER, Petitioner,

v.

John P. ASHMORE, Jr., Greenville County Supervisor, A. C. Thompson, Greenville County Jailer, William D. Leeke, Director of the Department of Corrections and the State of South Carolina, Respondents.

Civ. A. No. 69–271.

United States District Court
D. South Carolina,
Greenville Division.

April 16, 1969.

ing American personnel to make [warranty] repairs and to utilize them for the performance of such functions."

952

Kale R. Alexander and David A. Fedor, Columbia, S. C., for plaintiff.

Solicitor B. O. Thomason, Jr., Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This action, in which petitioner seeks the Great Writ, originated in Greenville County, South Carolina. Porter, his wife and several children resided in a private dwelling just outside of the City of Greenville. On December 31, 1965, the petitioner was in his residence with his wife and children when officers of the State Law Enforcement Division and of-

ficers of the Greenville County Sheriff's Department knocked at the door of the residence. The petitioner answered the door and was told that the police wanted in. He asked the officers if they had a Search Warrant and was told that they had none. The officers then informed him that they had an Arrest Warrant and that he was under arrest. They entered the residence and, according to the officers, asked permission to search. Permission was verbally given and the officers searched the premises. They seized notes, blank betting cards and other alleged gambling paraphernalia and took money petitioner's wife gave from her pocketbook. Both the seized physical evidence and the money was later introduced against petitioner on trial, over petitioner's objection. It was admitted by the police officers that there was no Search Warrant and that they did not advise the petitioner of his right to remain silent, or his right to an attorney. There was no interrogation.

When being cross-examined as to the arrest itself (Tr. p. 51) Greenville County Deputy Sheriff Bill Coleman testified as follows:

"Q. You knew exactly what you were looking for, did you not?

A. Yes, sir.

Q. Did you make the statement—did I understand you correctly to say you went to Mr. Porter's house to serve a warrant and quote 'see what evidence we could pick up at the house?'

A. Yes, sir.

Q. You are an experienced officer?

A. Well, I've been on the force about ten and a half years.

Q. You've had occasion to make any arrests, have you not?

A. Yes sir.

Q. You knew exactly what you were going up there to pick up?

A. I knew we were hunting gambling paraphernalia.

Q. At no time did you have a search warrant, did you?

A. No, sir."

Upon the trial of the matter, and again at the completion of the State's case, all appropriate motions were made and refused by the court. The petitioner offered no testimony or evidence in his own behalf. He was found guilty. Motions for a new trial and for a setting aside of the verdict were made and refused. An appeal was taken to the South Carolina Supreme Court on the questions presented herein and other questions of law. The conviction was affirmed and rehearing was denied. Petition for Writ of Certiorari to the United States Supreme Court was denied. The petitioner is now in the Greenville County Jail and the matter is before the United States District Court on Petition for a Writ of Habeas Corpus.

There are two issues raised by the introduction of the evidence in controversy and the objections thereto. They are (1) was the search and seizure, though made without a search warrant, valid because made contemporaneously with and incident to a lawful arrest and (2), assuming the search and seizure to be illegal, was it made valid by petitioner's alleged consent—that is, did Porter, by his consent, waive his constitutional protections? On appeal to the South Carolina Supreme Court both issues were raised and both were decided against petitioner.[1]

---

1. The State v. Porter, 162 S.E.2d 843 filed August 13, 1968:

While the inquiry of the defendant as to a search warrant and his subsequent statement to the officers to go ahead and look around, amply support a finding, as contended by the State, that the defendant thereby consented to the search, we think there is another principle, assuming there was no consent, which makes the exclusionary rule in Mapp clearly inapplicable here. It was thus stated in the case of State v. Swilling, 249 S.C. 541, 155 S.E.2d 607, quoting from 47 Am.Jur., Searches and Seizures, Section 19 (Cumulative Supplement):

"When a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. The right to search and seize incident to a lawful arrest and without a warrant extends to

█ This court delights in the reasoning of this opinion. It recognizes and appreciates, the responsibility of the State tribunal to determine the law. Unfortunately, when the policy of the highest court in the land expressed itself by a continuing refusal to review issues of the nature here, after the highest court of the State had reviewed, it placed the Federal trial court—one jurist—instead of a court of appellate authority—in the unfortunate role of a court of review. Such a detour is easy but it places a heavy burden on the single judge. The Federal trial court should not be burdened with the authority, or the task, of looking over the shoulders of a State court of review (in South Carolina composed of five *experienced* and dedicated professionals). But a bench of one, at the level of trial, cannot change, indeed is by tradition forbidden to write, judicial policy. Be that as it may, this court proceeds to discharge its responsibility. The edicts, the directions, the mandates of the Supreme Court of the United States, *are* the law of the land, and the directions to this court.

█ The South Carolina Supreme Court held that the search and seizure was valid because incident to and contemporaneous with a legal arrest. There are a great many authorities which support this position. It is well established that, under certain circumstances, police officers may make a reasonable search incident to a lawful arrest. The scope of permitted search exends to the premises where the accused is arrested and which is under his immediate control. See Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 and 19 A.L.R. 3d 727.

The court, however, is impressed by the fact that the police officers knew that they were going to make a search when they went out to Porter's house. Porter had been under investigation for some time and the police officers knew the nature of his operations. They had reason to believe Porter was carrying on a betting operation and carrying it on in his house. The police, therefore, knew they were going to search for betting paraphernalia. Since they knew what they were looking for and had ample time, they could have easily obtained a search warrant. Instead they obtained an arrest warrant and used it to enable them to make a search of the premises.

· This court is of the opinion that the police officers here should have obtained a search warrant. The facts in this case closely parallel the facts in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. In *Trupiano* the police officers knew that defendants were engaged in producing illegal whiskey. Although there was ample time and opportunity for the police officers to obtain a search warrant and they knew what equipment they would be searching for as evidence of the illegal whiskey operation, they failed to procure a search warrant. The officers, however, did make a search of the premises contemporaneously with a valid arrest of the accused. In ruling that the activities of the police officers constituted illegal search and seizure in violation of the Fourth Amendment, the court said:

> But we cannot agree that the seizure of the contraband property was made in conformity with the requirements of the Fourth Amendment. It is a cardinal rule that, in seizing goods and

things under the accused's immediate control and, to an extent depending on the circumstances of the case, to the place where he is arrested."

The articles in question were obtained without a search warrant, but incident to a lawful arrest, from the place where defendant was arrested and where it was charged that the unlawful gambling activities were carried on. The house was under defendant's control and the search was confined solely to implements used

in the commission of the crime. Under these circumstances, the search of the residence of defendant was not unlawful so as to make inadmissible the articles so obtained. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. There will be found an excellent annotation in 19 A.L.R.3d 727 in which recent cases are collected dealing with the validity of nonconsensual searches and seizures conducted without a search warrant following a lawful arrest.

articles, law enforcement agents must secure and use search warrants whenever reasonably practicable * * * This rule rests on the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities * * * In their understandable zeal to ferret out crime and in the excitement of the capture of a suspected person, officers are unlikely to possess the detachment and neutrality with which the constitutional rights of the suspect must be viewed

* * *

We do not take occasion here to reexamine the situation involved in *Harris v. United States*. The instant case relates only to the seizure of contraband the existence and precise nature and location of which the law enforcement officers were aware long before making the lawful arrest. That circumstance was wholly lacking in the *Harris* case, which was concerned with the permissible scope of a general search without a warrant as an incident to a lawful arrest. Moreover, the *Harris* case dealt with the seizure of Government property which could not have been the subject of a prior search warrant, it having been found unexpectedly during the course of a search. (Citations omitted.)

■ This court feels that the facts of the instant case fall within the rule of Trupiano v. United States. The police officers should have obtained a search warrant and the evidence found at Porter's house was therefore found as a result of an illegal search and seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

The second question to be decided is whether the petitioner by his alleged consent made valid an otherwise illegal search and seizure. Witnesses for the State testified that they went to Porter's door and asked to be admitted. *Porter asked the police officers if they had a search warrant and they replied that they did not,* but that they had an arrest warrant and that he was under arrest. At this point Porter admitted the officers into his house. The police testified that they asked Porter if they could search the house and that he told them to "go ahead" and look around, or words of similar import. The State contends that this conduct on the part of the petitioner was consent to the search and a waiver of his Fourth Amendment rights. The trial court agreed with the State's contention and ruled that Porter consented to the search; the South Carolina Supreme Court held that the evidence supported a finding of consent.

■■ One may consent to a search and seizure made without a warrant.[2] He thereby waives his constitutional protections under the Fourth Amendment. However, before there can be a valid consent to the search and a waiver of Fourth Amendment rights two things must exist. First the consent must be free and voluntary, that is, it must be shown that there was no coercion present. Secondly, the consent must be an intelligent waiver of one's constitutional rights; the one who gives his consent *must understand that he has a specific constitutional safeguard and he must intend to waive it.*[3] Consent therefore must consist of a free, voluntary and intelligent waiver of one's constitutional protections. It must be "freely and intelligently given."[4]

■ After considering the authorities, this court is of the opinion that, un-

2. Channel v. United States, 285 F.2d 217 (9 Cir.) ; United States v. Vickers, 387 F.2d 703 (4th Cir. 1967).

3. This is *"the law."* The average criminal, and especially the habitual criminal, could care less about the Constitution.

His only contact with the Constitution comes when his lawyer, or a court, finds the Constitution provides an avenue of escape (usually because of official omission) from the just desserts of his crime. And among crime's most vociferous allies are the "bleeding hearts" the "over-

der the circumstances, Porter's words and conduct did not represent consent to the search. Consent, in circumstances such as these, is more than mere acquiescence in a course of conduct on the part of the arresting officers. It cannot be said that Porter's consent was "freely and intelligently given."[5]

■ The arresting officer does not have to inform the accused of his Fourth Amendment rights in order that those rights may be waived. Although specific warnings must be given before an accused can effectively waive his Fifth and Sixth Amendment rights under rule announced in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, this rule has not been extended to Fourth Amendment protections. United States v. Lewis, D.C., 274 F. Supp. 184. However, it must be clearly shown that consent was voluntarily and intelligently given.[6]

In this case Porter was then placed under arrest and then the police officers were admitted into his house. No one informed Porter of his specific constitutional protections under the Fourth Amendment. At this point, if Porter had been informed of his rights under the Fourth Amendment, it could be said that he had "specifically, and intelligently", if not "freely and voluntarily," waived his constitutional protections. This was not done.

Porter was under arrest when his alleged consent was given. That fact is particularly important in regard to the questioned coercion. In Judd v. United States, supra, the United States Court of Appeals for the District of Columbia said:

Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the

educated" and the "do-gooders." Despite this the constitutional rights of every accused must be protected.

4. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649; Johnson v. United

obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. * * *

The burden on the Government is particularly heavy in cases where the individual is under arrest. Non-resistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. United States v. Novero, D.C., 58 F. Supp. 275; United States v. McCunn, D.C., D.N.Y.1930, 40 F.2d 295. * *

* * * His statements while in jail, which are relied on as consent, may be summarized as: I have nothing to hide, you can go there and see for yourself. Conceivably, this is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But, however, it be characterized, it hardly establishes willing agreement that the officers search the house without first procuring a warrant.[3]

3. For example, Officer Friel testified: "We asked him [Judd] if we could go over [to his home] and he said yes." It seems obvious that there was not much else Judd could say under the circumstances. Similarly, where Officer Friel testified: "I asked him if he minded us going over to his room and taking a look, and he said no."

Likewise in Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819, the court observed:

If a valid confession precedes a search by police, permission may show true consent to the search * * * But no sane man who denies his guilt would actually be willing that police-

States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

5. Judd v. United States, supra, note 4; Johnson v. United States, supra, note 4.

6. Judd v. United States, supra.

men search his room for contraband which is certain to be discovered. It follows that when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent; at least in the absence of some extraordinary circumstance * * *

Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, illustrates the principle. There policemen knocked on the door and a "voice inside asked who was there. 'Lieutenant Belland' was the reply. There was a slight delay * * * and then the defendant opened the door. The officer said, 'I want to take to you a little bit.' She then, as he describes it, stepped back acquiescently and admitted us * * *" The Supreme Court held that the search which followed was unlawful and the evidence should have been suppressed. The Court said: "Entry to the defendant's living quarters which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than on an understanding and intentional waiver of a constitutional right * * *."

In United States v. Page, 302 F.2d 81, the Ninth Circuit Court of Appeals, sitting en banc stated the rules cogently and concisely as follows:

The government must prove that consent was given. It must be shown that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently' given. There must be convincing evidence that the defendant has waived his rights. There must be clear and positive testimony. " 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show

that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest. (Citations omitted).

In the present case police went to Porter's house asked to be admitted. He asked them if they had a search warrant. This would indicate that at this point, before a situation arose in which coercion could be present, Porter did not intend to voluntarily consent to a search of his house.

■ In any case Porter was placed under arrest and the police officers were admitted. Then, immediately after having been placed under arrest and while confronted by five police officers, Porter was asked if he would mind if the officers looked around. Porter said, "go ahead or help yourself." Coercion is implicit in situations where consent is obtained under color of badge and the government must show that there was no coercion in fact.[7]

Both entry and consent were obtained under color of badge; also Porter was under arrest when he consented. It has been repeatedly held that overt words and conduct which manifest consent, in situations such as this one, may not be enough to constitute waiver of the protections of the Fourth Amendment.

■ The burden is upon the government to clearly establish that consent was given without coercion or duress and also that it was an intelligent waiver of a specific constitutional right. The government here failed to establish either.

The Court of Appeals for the Fourth Circuit recently ruled that where an individual freely and intelligently consents, a search and seizure may be made without a search warrant. United States v. Vickers, 387 F.2d 703 (1967). In the Vickers case, that court found that the suspect had consented to the search, thereby waiving his Fourth Amendment protections.

---

7. United States v. Page, supra.

The *Vickers* case, however, is distinguishable from the case at bar. In *Vickers*, the suspect was a postal employee who had pilfered money from the mails. Suspecting Vickers, the government marked certain notes and sent them through the mail in such a way that they would pass through Vickers' hands. As expected Vickers converted the letters. He removed the money contained in the letters and placed it in his pockets. Vickers was then asked to accompany the investigators to the Postal Inspector's Office where he was informed that an investigation was in progres and asked if he had any knowledge of the missing mail. Vickers replied that he did not. He was then asked if he had any objection to showing the investigators the contents of his pockets; Vickers replied that he had no objection and emptied his pockets. The contents included the notes which had been marked and posted.

In *Vickers*, the Fourth Circuit noted that suspect knew that he had no stolen letters or envelopes in his possession. He had only the money which he did not know had been marked. Therefore, Vickers was probably confident that he had nothing on his person which would incriminate him. The court said, "Consent searches have often been upheld where a defendant was unaware that a search would produce evidence against him." (Citations omitted). In the case at bar, the accused knew that a search of his house would reveal evidence of a betting operation. Porter must have been aware the notes, blank betting cards and other gambling paraphernalia were present. This court is reminded of the language of Higgins v. United States, supra, where the court said, "But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered." This difference in the factual circumstances is sufficient to distinguish the present case from the Vickers case. However, *Vickers* and the instant case are further distinguishable for another reason.

In *Vickers*, the suspect was not under arrest, whereas, in the case at bar Porter had been placed under arrest when his alleged consent was given. As noted above it has been held on numerous occasions that the circumstance of the accused's arrest is significant in regard to the question of coercion. "The government's burden is greater where consent is claimed to have been given while the defendant is under arrest." Judd v. United States, supra.

Each case, in which consent is relied upon as a waiver of constitutional protections, turns upon its own facts. This court finds that the circumstances of the case before it do not justify a finding that petitioner's course of conduct represented consent to the otherwise illegal search and seizure.

In view of petitioner's obvious guilt, this court is reluctant to hold that evidence upon which he was convicted was the result of an illegal search and seizure. As reluctant as it is to make its decision, this court realizes that such a result is necessary to preserve the integrity of our American constitutional system, based as it is upon fundamental concepts of due process of law and the guarantees of individual liberty contained in the Bill of Rights. This court, cannot be allowed, by its opinion as to the guilt of the accused, to be drawn into a course of action which would be a denial of due process and which at some later date might be used as a precedent in suppression of the Fourth Amendment protections against illegal search and seizure. The very heartbeat of the presumption of innocence has as its constitutional pacemaker [8] the requirement of due process. As interpreted by the Supreme Court of the United States, due process has here been violated.

Petitioner is entitled to relief. Respondent is directed to release petitioner.

And it is so ordered.

---

8. Nature's electrical impulse, or the improvision of science in the artificial, which regulates the rhythm of the heart pump in the human body.