447 F.2d 735
 UNITED STATES of America, Plaintiff-Appellee,
v.
David L. BAILEY, Defendant-Appellant.
No. 71-1153 Summary Calendar.*
*(1) Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 Sept. 3, 1971.
 
 Joseph D. Quinlivan, Jr., Mobile, Ala. (Court Appointed), for defendant-appellant.
 Irwin W. Coleman, Jr., Asst. U.S. Atty., C. S. White-Spunner, Jr., U.S. Atty., Mobile, Ala., for plaintiff-appellee.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 David L. Bailey appeals from his conviction by a jury for stealing 15.50 dollars from a letter which had been entrusted to him in his capacity as a United States Postal Service letter carrier, in violation of 18 U.S.C.A. 1709 (1970). Bailey contends that he was arrested without probable cause and illegally searched and that the fruits of this arrest and search were unlawfully used to convict him.
 
 
 2
 Bailey was employed as a letter carrier assigned to the Loop Station Post Office in the City of Mobile, Alabama. On the morning of December 4, 1968, a 'test' envelope was placed in the tray of mail consigned to Bailey's supervision. The envelope contained a handwritten letter, United States currency consisting of two 5 dollar bills, five 1 dollar bills, and two metal quarters. The serial numbers from the bills were recorded before the test envelope was sealed. The envelope bore a postmark of Detroit, Michigan and was addressed to a Mobile, Alabama address handled by the Crichton Station Post Office. The proper regular post office procedure required a letter carrier such as Bailey to turn back any letter placed in his custody which was within the area served by another post office station. Upon discovery of the fact that Bailey had failed to turn the test envelope back for referral to the Crichton Station, the superintendent of the Loop Station notified two postal inspectors. These inspectors approached Bailey in the Loop Station parking lot as he was preparing to depart for his home. They asked if he would accompany them to their office at the downtown post office building. Bailey agreed to go. He was not told that he was under arrest and there was no physical contact between either of the postal inspectors and Bailey, nor was there any conversation between the investigators and Bailey during the ride from the Loop Station to the downtown post office building. On arrival Bailey and the inspectors proceeded to the second floor office of the postal inspectors and at that time the inspectors gave Bailey the full warnings and advice required by miranda. bailey stated that he understood the warnings and advice, was agreeable to responding to questions and thereupon executed a written waiver form. The inspectors told Bailey that a letter he had handled that day on his route had not been properly accounted for. He denied any knowledge about the letter and then stated: 'Do you want to search me?' Contemporaneously with this statement, he took his wallet from his pocket and extended it toward one of the inspectors who declined to take it but acknowledged that he wanted to see its contents 'if you don't mind.' Bailey thereupon opened the wallet making visible some United States currency which was unfolded in the normal manner and some bills which had been folded double. Bailey extracted all of the currency from the wallet and tendered it to the inspector, who discovered that the serial numbers on the bills folded matched the serial numbers on the bills which had been placed in the test letter and were folded in the same manner as those placed in the test letter. He thereupon asked Bailey what he had done with the two quarters. At that point Bailey stated to the inspectors that he did not wish to answer any more questions and wanted to talk to an attorney. The questioning was terminated immediately.
 
 
 3
 At the time that the postal inspectors requested Bailey to accompany them to the downtown post office he had completed his day's work and had no further official duties with the post office department. His voluntary act in accompanying them to the main downtown post office building did not constitute a de facto arrest. United States v. Kershner, 432 F.2d 1066 (5th Cir. 1970).
 
 
 4
 We find it unnecessary to decide whether the above adduced facts relative to Bailey's production of his wallet and its contents for examination by the inspectors would constitute a search in any ordinary or accepted legal sense of that term. Assuming arguendo that this occurrence could be categorized as a search, the evidence indicates unequivocally that Bailey voluntarily consented for the inspectors to examine this currency. In fact he initiated the examination by suggesting it, in addition to voluntarily physically turning the money over to the inspectors. Cf. United States v. Kilgen, 445 F.2d 287 (5th Cir. 1971) (on petition for rehearing June 25, 1971).
 
 
 5
 Bailey asserts that his consent was obtained by trickery and fraud. To support this assertion, he relies upon Alexander v. United States, 390 F.2d 101 (5th Cir. 1968). In Alexander the postal inspectors informed a defendant mail carrier that they were investigating 'general theft of the mails, including jewelry,' when in fact they were investigating the disappearance of three test letters containing marked money. This Court held in Alexander that the misleading statement was designed to mislead the defendant into giving his consent to a search which unearthed the marked money and thus the consent could not be considered voluntary. Bailey reasons that since he was only told the inspectors were looking for a letter he had handled that day, he was similarly tricked within the context of Alexander. There are however two salient factors that completely distinguish Bailey's case from Alexander. There the inspectors led the mail carrier to believe that they were looking for jewelry and thus they introduced an extraneous factor into the investigation. Here, the purpose of the investigation was fully and truthfully stated. The inspectors were indeed looking for the letter that Bailey had improperly handled. The second distinguishing factor in Alexander was that the postal inspector in that investigation asked the mail carrier to produce his wallet and the mail carrier complied with that request. Here Bailey instigated the turnover transaction. Bailey's consent was not obtained by trickery or fraud, rather, it was completely voluntary.
 
 
 6
 We agree with the Fourth Circuit's decision in United States v. Vickers, 387 F.2d 703 (4th Cir. 1967) which is on all-fours with the case at bar.
 
 
 7
 The contentions raised on appeal are without merit. The judgment of the district court is
 
 
 8
 Affirmed.