John A. Gallucci, J.
In accordance with the decision of this court, John A. Gallucci, County Judge, dated October 21, 1974, a hearing was held to determine whether evidence obtained from the defendant as a result of his appearance before the Department of Labor on April 11, 1973, pursuant to the subpoena duces tecum dated March 28, 1973, was obtained in violation of the defendant’s constitutional right against self incrimination.
The defendant argues that his Fifth Amendment privilege was violated and, therefore, the instant indictment should be dismissed since the evidence so obtained was presented to and considered by the Grand Jury which thereafter returned the indictment.
From the testimony elicited at the hearing, the court finds the following facts and conclusions of law:
*275 On August 21, 1972, Investigator Cunningham of the New York State Police arrested the defendant pursuant to a warrant of arrest for theft of services at the defendant’s business premises. At the time of the arrest, various items were taken from the defendant’s person, including Exhibit 4, a blue envelope addressed to the defendant, Albert Spinelli, from the New York State Department of Labor, Division of Employment, which contained a yellow card indicating that the defendant had been receiving unemployment insurance benefits for the period March 13, 1972, to and including August 21, 1972, as well as other records pertaining to the receipt of such benefits during the period stated, and Exhibit 5, an official Unemployment Insurance Claim Card bearing Social Security Account No. 066181790 in the name of A. Spinelli. The Social Security number on the claim card corresponded with the Social Security Account Number on the yellow card and other papers contained in Exhibit 4.
After the arrest, Investigator Cunningham examined the documents and it appeared to him that the defendant was collecting unemployment insurance benefits illegally since he was operating a gas station and garage at No. 142 N. Route 9W, Congers, New York, where the arrest took place. On August 22, 1972, Investigator Cunningham contacted the New York Office of the State Department of Labor by telephone and related his belief that the defendant was collecting benefits in violation of the law. He wanted to prosecute the defendant for such violation but was informed it was strictly up to the Department of Labor.
After receipt of the telephone call, Special Agent Fries of the Department of Labor was assigned to the case on August 22, 1972, or shortly thereafter, to conduct an investigation of the defendant as to his eligibility and entitlement for unemployment insurance benefits. Special Agent Fries reviewed Exhibit A, the summary of Investigator Cunningham’s telephone call of August 22, 1972, and thereafter contacted Investigator Cunningham. He received from the State Police the background information about the defendant, as well as various names and his Social Security account number. This information had been obtained from the defendant at the time of his arrest on August 21, 1972.
Special Agent Fries continued his investigation and checked records in the offices of the County Clerks of Rockland County and Westchester County. He also checked certain bank rec *276 ords of the defendant. Finally, in March 1973, he concluded that the defendant was probably receiving unemployment insurance benefits to which he was not entitled.
Accordingly, on about March 28, 1973, a subpoena duces tecum was served on the defendant by leaving it at his place of business with a young lady who turned it over to the defendant. It directed the defendant to appear on April 11, 1973, at the Department of Labor Offices in New York City to testify in an official proceeding pursuant to article 18 of the Labor Law and further directed the defendant to produce certain business records, to wit, payroll books, checkbook stubs and cancelled checks, cash receipt and cash disbursement books, and copies of income tax returns for the years 1969, 1970 and 1971. The subpoena stated that the purpose of the hearing was so that the department could "verify the number of employees and the amount of their remuneration in accordance with Section 575, subdivision 1, of the New York State Unemployment Insurance Law”. The subpoena duces tecum, on the reverse side, set forth various sections of the New York State Labor Law, including section 634, which provides, "Any person who refuses to allow the commissioner or his authorized representative to inspect his payroll or other records or documents relative to the enforcement of this article shall be guilty of a misdemeanor”.
Special Agent Fries stated that his purpose in having the subpoena issued was to compile documentation in order to ascertain whether the defendant was eligible to receive unemployment insurance benefits and also whether he had received prior unemployment benefits improperly. It was the normal type of investigation.
In compliance with the subpoena, the defendant appeared at the Department of Labor Offices and brought with him certain records, namely, checks and check stubs. He was not given any Miranda rights nor was he informed in any way by anyone about his Fifth Amendment privilege against self incrimination. The Department of Labor has no rule, regulation or requirement that a witness subpoenaed to produce records and testify be so advised. The defendant was sworn and examined under oath by a Senior Investigator in the presence of Special Agent Fries. A transcript of the testimony was taken down by a stenographer. In answering questions propounded to him, the defendant made incriminating admissions to the effect that he had unlawfully received unemploy *277 ment insurance benefits during the period between July 1, 1972 and September 15, 1972, and that he had filed with the Department of Labor claim forms which were false.
The defendant testified at the hearing not only with respect to his arrest on August 21, 1972 and the seizure of papers and records from him by the State Police, but also as to the hearing held on April 11, 1972. He claimed that the papers and records were taken from a desk located in the office of his business premises and not from his person. In addition, he stated that on April 11, 1972, he advised Special Agent Fries and the Senior Investigator that he wanted to be represented by an attorney and also that he did not want to answer any questions on the ground that he would incriminate himself. He did this prior to being sworn and also during off the record conferences while the hearing was in progress. However, he was informed by the Senior Investigator that he had to answer or else be charged with a misdemeanor. He was also told that if he co-operated, he would not be prosecuted, the matter would go no further, whereas if he did not, he would be prosecuted. Thereafter, he answered questions and made admissions which he would not have, made except for the assurance given to him and also because of the threat of being prosecuted for a misdemeanor.
The court finds that the defendant was lawfully required to appear before and produce for inspection, the books and documents subpoenaed by the Department of Labor. The Department of Labor is charged with the duty of carrying out and enforcing the unemployment insurance provisions of the Labor Law. The requirement that an employer maintain and permit the inspection of his employment records is a legitimate statutory regulation for the public good. It is by the maintenance and inspection of such records that the public policy of providing unemployment insurance benefits is effected. The disclosure requirement applies to all employers and is not for the purpose of regulating the activities of any particular group which might be engaged in unlawful activities. Even though the information required to be reported may be incriminating to an employer, such books and records are by their nature public records and as such are "required records” to which the privilege against self incrimination does not apply. (Shapiro v United States, 335 US 1; People v Samuel, 29 NY2d 252). Pursuant to such “required records” doctrine, the defendant was obligated not only to produce his *278 records and permit an inspection thereof at the administrative hearing, but also to answer the questions of the investigating officers as were relevant and material to the information contained therein, namely, the number of defendant’s employees, the length of their employment and the remuneration paid to them. Within the confines of such inquiry, the defendant was not entitled to invoke his privilege against self incrimination and the administrative officers were under no obligation to advise him of any legal right to remain silent or to obtain the assistance of counsel. (United States v Jones, 72 F Supp 48).
Once, however, the investigating officers commenced to question the defendant as to his own application for and receipt of unemployment insurance benefits, the defendant could not be lawfully required to act as a witness against himself. By such inquiry, the defendant’s answers could subject him not only to civil penalties (Labor Law, § 594), but also to criminal prosecution (Labor Law, § 632). The administrative officers did not advise the defendant that he had the right to remain silent or that he could obtain the assistance of counsel, and the court concludes that under the circumstances of this particular investigation, the officers were under no legal duty to advise the defendant of such rights.
The investigation conducted by Mr. Satin and Mr. Fries was the customary investigation by the Labor Department into the books and records of the defendant as a record employer. Although information had been previously related to the Labor Department that the defendant might be unlawfully receiving unemployment insurance benefits, the defendant was subpoenaed to attend before the administrative hearing as a witness only, and not as a claimant or defendant charged with the unlawful receipt of unemployment insurance moneys. The evidence fails to demonstrate that on April 11, 1973 the defendant was a target for any criminal prosecution or that Mr. Satin or Mr. Fries were acting as agents of or as an arm of the New York State Police or the office of the District Attorney of Rockland County. The defendant was not in custody and it was not within the scope of authority of either Mr. Satin or Mr. Fries to determine that criminal charges would or would not be brought against the defendant. Under such circumstances, the Labor Department investigators were under no duty to advise the defendant of either of his privilege against self incrimination or to obtain the assistance of *279 counsel, including the fact that the investigation could have potential criminal consequences (United States v Robson, 477 F2d 13; United States v Habig, 474 F2d 57, cert den 411 US 972; People v Accavallo, 57 Misc 2d 264; United States v Michals, 469 F2d 215).
The court also finds that the defendant did not claim his privilege against self incrimination on April 11, 1973. The court observed the defendant testify and discredits his testimony including the alleged misrepresentations by Mr. Satin and Mr. Fries. It is unbelievable in view of the fact that the defendant had been a police officer and also because the defendant was no novice to the procedures of the Labor Department. The defendant had improperly received unemployment benefits on a prior occasion which he had been ordered to repay and was in fact still repaying on April 11, 1973. The defendant was experienced and knowledgeable, and answered the questions of the investigating officers voluntarily and not because of any fear of criminal prosecution.
Even assuming, arguendo, that the defendant did claim his privilege against self incrimination, which he had a right to do, the defendant’s own testimony discloses that the procedure employed by him to assert his claim of privilege against self incrimination was improper.
According to the defendant, he made a blanket refusal to produce his records and testify at the administrative investigation. The defendant was required to produce his books and records and permit an inspection thereof. He was also required to answer questions relating to his employees, their length of employment and the remuneration paid as wages. He had no right to invoke a blanket privilege against all inquiry, but was obligated to make individual objection to each question. In other words, the defendant was obligated to selectively invoke his privilege against self incrimination instead of broadly claim the same (United States v Roundtree, 420 F2d 845; United States v Ponder, 475 F2d 37).
The court has also considered the defendant's claim that on August 21, 1972, property was unlawfully seized from the possession of the defendant by the New York State Police Department. The court finds that on August 21, 1972, the defendant was under lawful custodial arrest by Investigator Cunningham and that the seizure of property from the person of the defendant was lawful (United States v Robinson, 414 *280 US 218; Gustafson v Florida, 414 US 260, People v Troiano, 35 NY2d 476; People v Weintraub, 35 NY2d 351).
Accordingly, the defendant’s motion for a dismissal of the indictment and suppression of evidence is denied.