John J. McCall, J.
A hearing has. been held on the motion of the defendant, brought pursuant to the applicable provisions of the Code of Criminal Procedure for an order of this court suppressing as evidence certain items of personal property belonging to the defendant seized as a result of an alleged search of the defendant’s room at 22 Balding Avenue, in the City of Poughkeepsie, New York. At the time of the incident under attack the defendant was a parolee subject to the jurisdiction of the Parole Board of the State of New York and had previously been released from custody upon conditions set forth in an agreement signed by the defendant. This agreement and its effect here will be hereinafter discussed. There was no search warrant here, no formal arrest at any of the times hereinafter mentioned and if the search is to be validated, consent thereto, of .some kind, must be found. Defendant, in alleging the illegality of the search, claims an invasion of *572 his rights under search and seizure under the Fourth Amendment of the United States Constitution.
Constitutional questions loom here in various farms. The claim has been advanced that parolees are in fact ‘‘ Prisoners ’ ’ and subject to the infirmities of that position, including the loss of the rights against search a free and unencumbered citizen might have. Apparently, there is no presently declared New York law so strictly limiting the right of parolees. There are Federal decisions holding a parolee or a probationer has rights under the Fourth Amendment (Martin v. United States, 183 F. 2d 436; Brown v. Kearney, 355 F. 2d 199; United States v. Lewis, 274 F. Supp. 184). In Lewis, the theory that parolee status alone strips a man of constitutional search and seizure rights is forcefully and specifically rejected. People v. Randazzo (15 N Y 2d 526) apparently contains the New York rule. In that case, the parole officer had a violation of parole warrant in his possession and had the residence of the defendant under surveillance. As defendant entered the apartment, the officer and two policemen approached; the officer told the defendant they wanted to talk to him upstairs. Once there, the defendant told the parole officer he had seen a ‘ ‘ known criminal ’ ’ and the officer told him he was being taken into custody for violation. The parole officer thereupon searched and found narcotics which he turned over to the police. The court held defendant, as a parolee, was deprived of no constitutional rights of search and seizure made under such circumstances. The lower court in this case had held that there was a consent to entry and the parolee’s rights in this case are more limited and circumscribed than an ordinary citizen’s, indicating by accepting the privilege he consents to broad and supervisory visitorial powers. In that case, the release agreement contained no specific consent to a search of the premises, as the instant agreement does, but contained only a right to visit the premises.
At this point, we consider another constitutional question: Was the imposition of the condition of waiver of Fourth Amendment rights as a prelude to release on parole done within constitutional limitations? Recent United States Supreme Court decisions have explicitly held that State Legislatures may not coerce or 11 needlessly ’ ’ encourage a defendant to waive the exercise of the constitutional right by granting defendant a special benefit' in consideration for the waiver or by penalizing the defendant for failure to waive his constitutional right. The Supreme Court recently condemned a statute that, in essence, provided for the death penalty after a jury trial, but not such a penalty in the event of a court trial or a plea of *573 guilty. Such a statute, said the court, put pressure on the defendant not to exercise his Fifth and Sixth Amendment rights so as to avoid the death penalty. (United States v. Jackson, 390 U. S. 570.) In Garrity v. State of New Jersey (385 U. S. 493) the court would not permit the placing of the privilege of no self incrimination against the forfeiture of a public position. In Simmons v. United States (390 U. S. 377) the court frowned on a rule that would permit the ultimate use of testimony by a defendant necessary to give him standing to pursue Fourth Amendment rights against him on the main charge indicating he need not forfeit one right to preserve another. Spevack v. Klein (385 U. S. 511) involved the placing of the right against self incrimination against a lawyer’s right to remain a member of the Bar. The thrust of all of these cases is that the Hobson’s choice presented nullified free choice and was in effect coercion. It is 'to be noted that in all cases the rights of an ordinary citizen are involved and for the most part a defendant or a prospective defendant. By his conviction a parolee has been removed from society. To return him thereto ahead of his time is the conferring of a benefit and society seems to have a right to make sure that he is worthy of it. Society’s assurance in that regard comes from parole supervision and the' surrender of constitutional rights to insure adequate control at all times is not out of line with reason. We have here a balancing of rights— society against the offender — and the situation cannot be equated with those situations condemned by the United States Supreme Court as unconstitutional. It would appear, however, that nothing short of a clear and specific waiver as to search and seizure would suffice, but the waiver contained in the release agreement here meets the test in that respect.
Robert Foley testified he was notified the defendant was in the police station giving a statement that he, the defendant, had been assaulted. Foley was a parole officer and the defendant was one of his “ strict supervision ” subjects. Upon his arrival at the station house, he spoke with the defendant first, then a police officer by the name of Purdy, about the assault on the defendant. He further noticed that defendant’s clothes were not in the condition that would indicate a scuffle had occurred and the defendant said he had changed them. Defendant’s fingers were observed bandaged. Purdy, Foley, and the defendant got in the police car to retrace steps on the defendant’s story as to the assault upon him in order to find the place of the assault. On the trip, the defendant told Foley that if he wanted to look at the clothing he could. Thereupon the trio went to the *574 apartment. The defendant tried to open the door; handed the keys to Foley and all entered. The defendant pointed out a pair of pants on a chair and a reversible ski jacket in a closet. Both of these items are Exhibits in evidence here, People’s Numbers 2 and 3 in evidence. Foley took them away with him to examine them. Much later he turned them over to Purdy in accordance with the policy to do so if the existence of a new crime is determined. Foley testified the defendant was not under arrest at the station, in the car, or in the apartment, and that his interest in going to the apartment was to determine if there had been any parole violation by the defendant.
The defendant, in tendering the issue by affidavit, alleges and states that while he was .supposedly under arrest for violation of his parole for drinking a few days before being taken into custody, his room was searched by various police officers and that the black reversible ski jacket, a black turtle neck sweater, a pair of dark green trousers, a pair of black hoots, a wrist watch and a leather belt were removed by the State Police. He further alleges that there was no warrant; that the search was made in his absence; not an incident of his arrest, and without his consent and not connected with the violation for which he was being held. As to all articles of personal property save the ski jacket and the trousers, the issue tendered has not been met and they are therefore suppressed. Foley’s search was by consent. Even assuming that the relationship of parole officer-parolee and the stated purpose of Foley to check out the parole violations made defendant’s handing over of the keys a non-voluntary consent. He had previously consented to the search and his conduct could he viewed as a reaffirmation of it or the act of a man who knew he was bound by it as previously given.
The search being in accordance with the law and not unreasonable, the motion to suppress as to the ski jacket and trousers is denied.