J. Irwin Shapiro, J.
Motion by the defendant “ to suppress the evidence, or in the alternative, for a hearing to suppress the evidence as illegally obtained as a result of an illegal search and seizure on July 31, 1963, without a search warrant and without probable cause ”.
The purpose of this suppression motion is to forestall the use in evidence of a handgun, for the unlawful possession of which this defendant has been indicted (7 felony counts). It was discovered in and taken from the locked trunk of a car theretofore operated by the defendant, in the course of a search by a parole officer (and local police officers who were summoned to assist him). It was conducted after execution of a warrant for defendant’s arrest as a parole violator.
The question to be determined is whether, in view of defendant’s position as a parolee, the search, without a search warrant, was unreasonable under the circumstances in which it occurred.
After argument of the motion, a hearing was ordered and the facts adduced thereat are as follows:
Prior to this defendant’s release from Clinton Prison on parole, he had been serving an indeterminate term (not less than *67 one nor more than two years) under a sentence handed down January 10, 1962 upon his conviction of attempted robbery, second degree, in the County Court of Kings County. On February 11, 1963 he “ agreed to lead an honest and upright life and abide by the rules ” embodied in a parole agreement signed by him and on February 13,1963 he was let out on parole and placed under the jurisdiction of the Board of Parole until January 12, 1964 when his maximum term would expire in due course. Thereafter he was either put or eventually came under the supervision of parole officer William J. Quinn who, on or about July 24, 1963, participated with his official supervisors in a case conference during which he gave them “certain information” about the defendant. The nature of the intelligence thus reported does not appear but at least its significance to the participants is suggested by the result, for officer Quinn was instructed to get a warrant and execute it if and when he found the defendant violating his parole.
Through his obedience to that direction the officer was later armed with a warrant for Langella’s arrest when he had him under surveillance, in Manhattan, on July 31, 1963. At an unspecified hour of that day, the officer observed defendant get behind the wheel of a car in which he had been a passenger and, apparently with the consent of its erstwhile operator — who walked off, leaving Langella alone in the vehicle — drive it from Manhattan to Cropsey Avenue, Brooklyn, parking it outside a house which he entered and which, as it later turned out, was the home of his parents.
The officer then advised his supervisor by telephone of what he had seen and was instructed to execute the warrant.[1] Before doing so he asked and received the assistance of local police officers in whose company he returned to the premises, where one of the officers rang the bell and asked for the defendant, to whom officer Quinn identified himself and Langella was then questioned about the parked car. The setting in which the questioning occurred is not disclosed and neither is it shown what answers, if any, were given by defendant but at any rate, officer Quinn told Langella that he was being taken into custody as a parole violator, and showed him the warrant for his arrest. When the parties were in the street, defendant was asked for the key to the car. He said that it was in the house. He was brought back into the house by the parole officer, at whose direction he retrieved the key from a living room sofa on which he *68 had been seated when the officers entered. Then, with a detective at the wheel and with the others, including defendant, as passengers, the car was driven to a local station house where the prisoner was subjected to a short period of questioning. Whether anything of substance was brought out in the process, does not appear. Be that as it may, Langella was then brought out to the car and, in his presence, the parole officer used the key to unlock the trunk. An inspection (search) of the trunk disclosed the weapon on which the present charges are based.
In the determination of this motion I am, of course, concerned only with the legality of the search and seizure and not with the problem of proof of the substantive charges contained in the indictment (see People v. Spillman, 309 N. Y. 295; Penal Law, § 1899, subd. 3 and former § 1898-a).
In their treatment of the issue opposing counsel depend, mainly, on their different views of the proper scope of a search as an incident of a lawful arrest. I prefer to rest this decision on the broader ground that applicable and controlling law expressing and implementing a sound public policy subordinates the parolee’s rights to the reasonable exercise of the Parole Board’s powers of supervision and investigation. Through the exercise of those powers the purposes of parole are advanced either by the Parole Board’s persuasion that the parolee is responding to the effort to rehabilitate him, thereby confirming its original judgment that “ if * * * released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society” (Correction Law, § 213), or by its conviction that there is reasonable cause to believe that he “ has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect ” and that appropriate action to bring about his reinstitutionalization ought to be taken (Correction Law, § 216). I hold that, on the facts developed by the proof in this case, the action taken by the parole officer was legally justified and that the defendant cannot, consequently, sustain his claim that the .search and seizure were unreasonable. Within the spirit and intendment of the' law, it seems plain that the test of reasonableness is not necessarily the same, when applied to a parolee, as when applied to a person whose rights are not similarly circumscribed and there is hardly any doubt that, within the constitutional framework, the parolee’s rights may be and are properly conditioned and limited (see, e.g., People v. Triche, 148 Cal. App. 2d 198; People v. Denne, 141 Cal. App. 2d 499).
*69 A convict has no constitutional right to he released on parole. Just as commutation may be granted by the State executive “upon such conditions and with such restrictions and limitations, as he may think proper ” (N. Y. Const., art. IV, § 4; Code Crim. Pro., § 692) so, too, the Board of Parole is given power to determine what eligible prisoners may be released on parole “and when and under what conditions” (Correction Law, § 210). Just as pardon and conditional commutation are not granted as matters of right but as acts of grace (Roberts v. State, 160 N. Y. 217, 222; People ex rel. Atkins v. Jennings, 248 N. Y. 46, 51) so, too, “ [p] aróle is not a right, but a privilege, to be granted or withheld as discretion may impel ” (People ex rel. Cecere v. Jennings (250 N. Y. 239, 241).
Apart from the explicit conditions of parole (Correction Law, § 215), the parolee must know that the Division of Parole is charged with the duty of supervising him 6 ‘ and of making such investigations as may be necessary in connection therewith, of determining whether violation of parole conditions exists * * =:s and of deciding the action to be taken with reference thereto ” (Correction Law, § 210). Common sense dictates that parole officers charged with these duties must have the powers reasonably necessary to their adequate performance, and the parolee is chargeable with knowing that his rights, while at liberty on parole, are qualified accordingly, “ [a]nd no harsh criticism is merited of the way in which said Board has to get its information. It violates no right of any convict. His parole is, in the first place, but a mere matter of grace.” (State ex rel. McQueen v. Horton, 14 So. 2d 557, 560 [Ala.].)
It being the duty of the Parole Board to determine what action should be taken on the alleged violation and it being assumed that it would “ act promptly and justly upon the facts presented ” (People ex rel. Natoli v. Lewis, 287 N. Y. 478, 482) a knowledge of all of the facts was not only desirable but necessary to a fair decision and it was officer Quinn’s duty to gather those facts as fully as possible and report them to the board. Obviously, that called for whatever additional investigation was reasonably indicated after the arrest and the officer would have been remiss had he failed to conduct it. On its face, the violation of driving the automobile was technical and was offset by the suggestion of filial deference and if that were all there actually was to the matter, the action taken thereon by the board might understandably be relatively mild. On the other hand, if it appeared that the car had been used for a criminal purpose, the range of Langella’s implication might run from a knowing association with an evil companion or convicted criminal *70 (Parole Agreement, par. 4) to personal participation in the commission of a crime and in that event the action taken by the board might well be severe. Thus, far from having completed his duty and exhausted his power when he made the arrest, the officer was further duty bound to investigate and report the attending circumstances as completely as possible for the guidance of the board when it came to hold a parole court to consider the case and hear the alleged violator’s explanation of the charges made against him (Correction Law, § 218). Crediting and accepting the defendant’s contention — that his release on parole did not divest him of all of his rights — does not however require a conclusion that his rights were equal to those of a person enjoying unrestricted and unconditioned liberty.
By express provision uf law this defendant, while on parole, remained s ‘ in the legai custody of the warden of the prison from which * * * paroled, until the expiration of the maximum term specified in his sentence ” (Correction Law, § 213).[2] Had he not been released, the Warden of Clinton Prison could and would, no doubt, have readily subjected defendant’s cell or person, to a search for tools, weapons or other contraband upon a suggestion that any such might be found. The necessities of the decision in this case are obviously more limited. It is pointless therefore, to deal with extremes, in the abstract. Whether, as counsel suggests, ‘ ‘ the provision that a parole officer must be allowed to visit the parolee at home does not mean that the parole officer can come at 3 o’clock every morning to see the parolee ’ ’ has no bearing on the problem at hand. The only judicial question to be answered here is whether the search which was in fact conducted was reasonable under the circumstances and in the light of the duties imposed by law upon the officer who took the action in question. I hold that it was.
The arrest was made under a warrant, as required by law, upon the basis of reasonable cause for belief that the prisoner had violated his parole (Correction Law, § 216) and “ [w]e cannot go behind the parole warrant, in considering this question of power, to determine whether the arrest on the charge should have constituted reasonable cause in the mind of the parole officer” (People ex rel. Natoli v. Lewis, 287 N. Y. 478, 481, supra; United States ex rel. Nicholson v. Dillard, 102 F. 2d 94; *71 Jarman v. United, States, 92 F. 2d 309, 311). If I am correct in my conclusion that the search was reasonable, the seizure of the contraband incidentally disclosed was legal and its use in evidence against the defendant cannot justly be forbidden (Harris v. United States, 331 U. S. 145; Martin v. United States, 183 F. 2d 436; Benton v. United States, 70 F. 2d 24).
The cases of People ex rel. Oddo v. Fay (16 A D 2d 932, affd. 13 N Y 2d 762) and People v. Randazzo (37 Misc 2d 80) both cited by the District Attorney, are inapposite. The Oddo case did not involve a criminal prosecution against the defendant but was a proceeding by him against the members of the Board of Parole and as the unreported opinion at Special Term states: ‘‘ there is nothing in the record to show that evidence was adduced before the parole board obtained by the alleged illegal search and seizure ’ ’. The Randazzo case involved a parole agreement containing an express consent to a search of defendant’s person or home and, in fact, the search was conducted in his apartment, where the arrest occurred (37 Misc 2d 80, 81). In this case the consent to the search of the trunk of the automobile, if any, depends on an implication to be drawn from the delivery of the car key, but the attending circumstances negative that inference and I find it to be the fact that there was merely submission to authority, which is not consent (Johnson v. United States, 333 U. S. 10; Catalanotte v. United States, 208 F. 2d 264; Judd v. United States, 190 F. 2d 649). Under such circumstances, if this were the ordinary search and seizure case dealing with an ordinary individual — not a parolee — I would hold the search to be illegal since a presumption exists against a waiver of constitutional rights (Johnson v. Zerbst, 304 U. S. 458) and the burden of showing consent is on the People (Amos v. United States, 255 U. S. 313; Channel v. United States, 285 F. 2d 217). Beyond that, the time when and the locale in which the search occurred in the present case are such as to raise a question of remoteness were it not for my conclusion of law that under the facts of this case the search of the automobile theretofore driven by the defendant, although delayed, was not only permitted but dictated by a duty imposed by law, which also required the parolee’s submission despite his tacit or express opposition thereto.
The motion is therefore in all respects denied.

. One of the conditions of the defendant’s parole was that he refrain from operating an automobile.

. As a paroled prisoner the defendant was still in legal custody, but the area of restraint — the prison walls — were extended in accordance with the terms of his parole (People ex rel. Brown v. Johnston, 9 N Y 2d 482; People ex rel. Rainone V. Murphy, 1 N Y 2d 367; Newton v. Twombly, 228 N. Y. 33; Jenkins v. Madigan, 211 F. 2d 904; United States ex rel. Rowe v. Nicholson. 78 F. 2d 468).