[Crim. No. 6573. First Dist., Div. Four. Mar. 31, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ESPERLEE GILKEY, Defendant and Appellant.

**Counsel**

Erwin E. Adler, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**DEVINE, P. J.**—Appellant was found guilty of burglary (Pen. Code, § 459) by verdict of a jury. He appeals.

On the night of December 12, 1966, a warehouse was burglarized and 17 television sets were stolen. A guard at a nearby Christmas tree lot testified that he saw a yellow Econoline type panel truck parked next to the warehouse, and that the lights of the truck were turned off when a car approached. Then the truck drove away. The owner of a truck rental agency testified that he rented a yellow Econoline truck to appellant, Gilkey, on the afternoon of December 12, 1966. Appellant told the lessor that he needed the truck to move some furntiure. A technician of the Oakland Police Department testified that he took plaster casts of tire tracks found behind the warehouse; and a criminalist testified that she made tire impressions from the truck which had been rented to appellant

and concluded that the tires had the same design features. The rented yellow truck was returned to the parking lot of the rental agency early on the morning of December 13.

Brand new television sets, later shown to have been taken in the burglary, were found in appellant's garage, under circumstances which are described below in the discussion of appellant's point that there was an illegal seizure.

A girl friend of appellant testified that he telephoned her from jail and told her to knock in the boards of the garage and to take the things out because it would rain. On cross-examination, she said that the only thing appellant asked her to remove was his test equipment. She had had an argument with appellant about the rental of a truck to move certain furniture of hers.

A jailer testified that he heard the telephone conversation between appellant and the girl friend, in which appellant said: "Remember the truck I rented to move you? Well, they say it was used for something else"; and, "Move the stuff in my garage so it will not get wet. You know it is worth plenty." The jailer did not remember the words "test equipment," but just "move my stuff."

Appellant did not testify. He produced an alibi witness, a woman who testified that he had spent the night of December 12 at her home. On cross-examination, this testimony was badly damaged, if not destroyed. The witness was confronted with a statement made to the police, in part of which she said that appellant had left her house on December 11 and had not returned until December 15. She said she did not remember having said this, and later, when asked the date of Gilkey's next visit following December 11, replied that she did not remember.

## Legality of the Search

Appellant's first point is that the search of his garage, for which there was no search warrant, was illegal because it was not contemporaneous with or incident to his arrest. The People respond by citing the proposition that a parole officer has the right to search his parolee's premises without a warrant or a showing of probable cause. The principle upon which the People rely has been announced in several cases: *People* v. *Limon,* 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91]; *People* v. *West,* 253 Cal.App. 2d 348, 354 [61 Cal.Rptr. 216]; *People* v. *Quilon,* 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294]; *People* v. *Gastelum,* 237 Cal.App.2d 205, 207 [46 Cal.Rptr. 743]; *People* v. *Hernandez,* 229 Cal.App.2d 143, 149 [40 Cal.Rptr. 100], cert. den. 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810]; *People* v. *Robarge,* 151 Cal.App.2d 660, 665-666 [312 P.2d 70]; *People*

v. *Triche,* 148 Cal.App.2d 198, 202-203 [306 P.2d 616]; *People v. Denne,* 141 Cal.App.2d 499 [297 P.2d 451]. In some of these cases, regular police officers had participated to greater or less degree in the searches. The holdings are based on the theory of *custodia legis,* which recognizes that a parolee is still under the control and responsibility of his parole officer. Although he is outside the prison walls, the parolee is technically still in custody. (*People* v. *Quilon, supra,* at p. 627.)[1]

■ On the other hand, the fact that a person is on parole does not in itself justify search by peace officers other than parole officers. (*People* v. *Gallegos,* 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Quilon, supra,* at p. 627.) Recently, the Supreme Court has expressed the applicable principles in *In re Martinez,* 1 Cal.3d 641, 647, fn. 6 [83 Cal. Rptr. 382, 463 P.2d 734]: "Searches by parole officers pursuant to their duties, just as other administrative searches (see *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727]) are subject to the broad reasonableness requirement of the Fourth Amendment. (See, e.g., *People* v. *Langella* (1963) 41 Misc.2d 65 [244 N.Y.S.2d 802, 805]; *Martin* v. *United States* (4th Cir. 1950) 183 F.2d 436, 439, cert. den. 340 U.S. 904 [95 L.Ed. 654, 71 S.Ct. 280]; cf. *Terry* v. *Ohio* (1968) 392 U.S. 1, 16-20 [20 L.Ed.2d 889, 902-905, 88 S.Ct. 1868].) ■ The conditional nature of a parolee's freedom may result in some diminution of his reasonable expectation of privacy and thus may render some intrusions by parole officers 'reasonable' even when the information relied on by the parole officers does not reach the traditional level of 'probable cause.' A diminution of Fourth Amendment protection, however, can be justified only to the extent actually necessitated by the legitimate demands of the operation of the parole process. (See *United States* v. *Lewis* (S.D. N.Y. 1967) 274 F.Supp. 184, 190; cf. *Camara* v. *Municipal Court, supra,* 387 U.S. 523, 534-539 [18 L.Ed.2d 930, 938-941, 87 S.Ct. 1727]; Note, *Parole Status and the Privilege Concept,* 1969 Duke L.J. 139, 145, fn. 19.) ■ When a police officer is not aware that a suspect is on parole, or is not investigating a parole violation, an intrusion into the parolee's privacy cannot be properly justified by the needs of

---

[1]Appellant contends that the rule set forth in the foregoing cases has been set aside impliedly by decisions of the Supreme Court such as that in *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], requiring that parole officers in making an arrest comply with the provisions of section 844 of the Penal Code. This section requires explanation and demand for admittance in order to justify entry into a house to make arrest. But Penal Code section 3061 expressly provides that an order to retake a parolee must be executed in like manner as the ordinary criminal process. This includes section 844. (*People* v. *Rosales, supra,* at p. 304.) Besides, even an escape from custody does not justify entry into a house without explanation and demand. (*People* v. *Rosales, supra,* at p. 304; *People* v. *Kanos,* 70 Cal.2d 381, 384 [74 Cal.Rptr. 902, 450 P.2d 278].) In the case before us, there was no entry in order to effect an arrest.

the parole system. (See also *United States* v. *Hallman* (3d Cir. 1966) 365 F.2d 289 (parole officer was acting merely as 'agent, tool or device' of arresting police officers and thus his search of parolee without probable cause was illegal).)"

We proceed to give facts relating to the search and to discuss them in the light of the rules that 1) the search of a parolee's premises by a parole officer need not satisfy completely the usual test of probable cause, and 2) the search must have been necessitated by the legitimate demands of the parole process. ■ We conclude that there was good cause for the search, even though the cause might not have been sufficient in the case of a non-parolee, and that the search was made necessary by legitimate demands of the parole process.

On January 5, 1967, Barton Benderoff, appellant's parole officer, was informed by the Oakland Police Department that they wished to question appellant with regard to a burglary. Benderoff had visited appellant at his home at least a dozen times. He had been in the garage which appellant was using as a workshop for the repair of television and radio equipment. He did not take appellant into custody upon his arrival at the garage, but he did ask appellant to come with him to the police and told appellant that "it was voluntary, if he wanted to make a statement or not."

Before the two departed for the police station, Benderoff had observed that there was a 1967 (that is, the latest model) Pontiac Grand Prix automobile of the value of $5,000 on the driveway of appellant's residence. The officer did not see how appellant could manage this on his salary, which was about $100 a week. It is to be observed that appellant's parole had been violated for shoplifting in 1965 and that he had served county jail time, following which he had been reinstated on parole. Thus, not only had the parole officer knowledge that appellant had not theretofore lived up to the terms of parole, having been guilty of thievery, but also, he had information which would show that appellant's time for earning had been limited. Furthermore, appellant had not informed the parole officer, as he was required to do, of his purchase of the expensive vehicle. The sudden enrichment of appellant naturally was a subject of interest to the officer, particularly in view of the call he had received from the police.

The interrogation at the police station took about two hours. The parole officer asked questions during the interview. Benderoff believed that appellant was lying to the police officers in matters relating to the truck rental, removing of furniture, and the argument in which appellant's girl friend took part. Benderoff found appellant's whole story to be confused. He took his parolee into custody. Although the testimony during the *voir dire* of the parole officer was brief, we find it to be ample for the

judge to have concluded that the officer took an intelligent and purposeful part in the proceeding of interrogation, and that he came to his judgment about appellant's prevarications by his own reasoning. There is no suggestion that during the *voir dire* or during the motion to exclude evidence, the officer was prompted by the police officers to come to his conclusion or to make the arrest.

Although there is no direct evidence in the record that the theft of television sets was made known to Benderoff, it is incredible that the parole officer would not be informed that his parolee was suspected of stealing television sets. Television and stereo sets were the only things taken in the burglary. Appellant was a television repairman. The interrogation had to do, among other things, with the rented truck which was observed at the scene of the theft of television sets. When we consider that the interrogation took two hours, we cannot imagine that the very subject matter, television sets, of the single burglary which was in question was unknown to the parole officer. At the *voir dire* of the parole officer and upon motion to exclude the evidence, there was no suggestion by the defense that the parole officer did not know what the police officers obviously were talking about, the stolen television sets. Had he made such suggestion seriously, no doubt the matter would have been cleared up at once. The reason he did not do so is plain. It was simply taken for granted that the parole officer was informed of the matter.

The next action by Benderoff was, so far as appears from the record, taken entirely on his own initiative. Shortly after he had placed appellant in custody, Benderoff went alone to the Gilkey residence in order to talk with Gilkey's girl friend. There is no intimation that this visit was prompted by the police. They took no part in it, and perhaps did not even know of it. (The matter of moving the girl friend's furniture was the subject which had caused Benderoff to believe that appellant was lying. It will be recalled that appellant had stated to the rental agency that his purpose was to move furniture. It appears probable from the fragmentary testimony on *voir dire* that appellant had connected rental with this moving. Actually, as it developed from the testimony of the girl friend, her furniture had not been moved by the yellow rented truck but by another vehicle owned by appellant. He had demanded rental from the girl friend and this led to their argument.) The girl friend was not present, but the significance of the visit is that Benderoff himself was pursuing the matter and was not acting as a mere agent of the police.

Finally, we come to the matter of the entry into the garage. It is uncertain who made the suggestion that the search be made. At one point, Benderoff testified that he was requested to assist the police, but later he said that he may have asked them to go with him. Also, it is uncertain

whose key produced opening of the garage door. Benderoff's keys were tried and so were those of another officer. As soon as the door was opened, the television sets were in full view. It was unnecessary for the parole officer or anyone else to take charge of a search, as in *People* v. *Quilon, supra,* 245 Cal.App.2d 624.

We conclude that the parole officer was meeting legitimate demands of the operation of the parole process. The fact that he was cooperating with ordinary peace officers does not mean that he was not performing, simultaneously, the duties of his own office. (*People* v. *Quilon, supra,* at p. 627; *People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal.Rptr. 100]; *People* v. *Contreras,* 154 Cal.App.2d 321 [315 P.2d 916]; *People* v. *Triche,* 148 Cal.App.2d 198 [306 P.2d 616].) In the nature of things, parole violations frequently must be brought to the attention of parole officers by regular police officers. Although the concept that a parolee's abode is simply an enlargement of his prison cell no longer seems valid, nevertheless the court should not engage in fine metaphysical distinctions as to which effort was primary and which secondary, the proper enforcement of parole or the solution of criminal cases. It is enough that the parole officer have exercised, as this one did, an intelligent judgment on a critical situation which was placed before him by the police plus a suspicious enrichment of the parolee as evidenced by the expensive automobile, and following a full but unforced opportunity given to the parolee to make his explanations.

■ The parole officer's function goes beyond that of the peace officers, because he may ultimately find violations of parole other than commission of a specific fresh crime which the peace officers are investigating. In the present case, the parole officer's suspicions of parole violation had been aroused by appellant's possession of the automobile. They were further excited by the interrogation. He might have found within the garage property which could not be connected with the particular warehouse burglary and which would be the proper subject of further interrogation of the parolee. We have in mind, too, that the parole officer may properly be interested in the matter of restitution of stolen goods to the owners, a process quite apart from the matter of prosecuting a parolee for a specific crime for which the decision rests with the district attorney. Thus, two classes of officers were engaged in the investigation: the peace officers, who were attempting to solve a crime and to gain the necessary evidence for prosecution of the offender; and the parole officer, whose duties embraced discovery of parole violation, whether by one specific crime or not, the supervision of the conduct of the parolee, his progress towards rehabilitation, and the protection of the public. Enforcement of parole, it has been pointed out, and we repeat, is beneficial to that large number of

prisoners who have reached the time when they are eligible for parole, because laxity in the control of parolees is likely to result in the retention of many eligibles within the prison walls. (*People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal.Rptr. 100].)

A few words should be said about the cases cited by the Supreme Court in *In re Martinez,* 1 Cal.3d 641, at p. 647 [83 Cal.Rptr. 382, 463 P.2d 734]. In *People* v. *Langella,* 41 Misc.2d 65 [244 N.Y.S.2d 802], and in *Martin* v. *United States* (4th Cir. 1950) 183 F.2d 436, there was an enunciation of the general principle that the search by a parole officer must be related to the parole process, but in each of these cases the search was upheld. In *United States* v. *Lewis* (S.D.N.Y. 1967) 274 F.Supp. 184, the search was not by parole officers at all, but by FBI agents. In *United States* v. *Hallman* (3d Cir. 1966) 365 F.2d 289, there was a flagrant use of the parole officer's status by FBI agents for their own purposes. They arrested the parolee illegally and brought him to the parole officer who, obviously by prearrangement, asked to see money which the parolee had on his person. The parole officer, however, apparently had not been informed of any particular crime of which the parolee was suspected. The parolee produced money, including a hundred dollar bill which matched bills reported stolen from a bank. The examination of the money and the determination that it was stolen were not the result of any judgment on the part of the parole officer, but of the federal agents only (365 F.2d at p. 292). Moreover, the parole officer violated provisions of the New Jersey law (365 F.2d at p. 291).

### *Reference to the Parole Officer*

When Benderoff commenced his testimony before the jury (following *voir dire* in the absence of the jury, at the end of which the judge ruled that the search was valid), the district attorney asked Benderoff what his occupation was. When the reply was made that he was a parole agent, defense counsel demanded a mistrial. This was denied. It is now contended by appellant that the question and answer informed the jury that appellant had previously been convicted of felony, a fact that would not have been brought out otherwise because appellant did not take the stand. But although gratuitous reference to the parole officer of an accused is improper (so held in *People* v. *Stinson,* 214 Cal.App.2d 476, 481 [29 Cal.Rptr. 695], although there held to be nonprejudicial), in the present case the reference was entirely proper. The fact that the garage in which the television sets were found was used by Gilkey was proved by the testimony of Benderoff, who had seen Gilkey working there on two earlier occasions, and who saw that wires running from Gilkey's house to the garage provided Gilkey's source of light. The defense had made it plain, when arguing the matter

of the search, that it intended to challenge the prosecution's contention that Gilkey occupied the garage. Since it was legitimate to use the officer's testimony, it was equally proper to identify him. The jury was entitled to know who he was and what office he held in judging his credibility.

### Testimony of the Criminalist

■ Appellant makes the point that the criminalist was not qualified as an expert and that her testimony anyway is without value because she was unable to say that the tire marks at the warehouse and those taken from a tire which had been removed from the vehicle which appellant had rented on December 12, 1966, were the same. As to her qualifications, we hold that they are sufficient because the witness had done work of comparison of physical objects (see *People* v. *Kross,* 112 Cal.App.2d 602, 614 [247 P.2d 44]); but even if she were not qualified as an expert, her testimony was limited to saying that the tire marks were of the same design, something which a layman could observe. The casts were then passed among the jurors. Therefore, the tesimony was really in the nature of preliminary explanation in order to call the attention of the jurors to a comparison which they themselves might make. It was freely admitted by the criminalist that she could not draw a complete conclusion, principally because the impression made by tires when they are under the weight of a truck, as at the warehouse, would be different from that of a tire which had been removed from the vehicle. Thus, the jury got from the testimony no more than that the design (and perhaps the width) of the tires was the same, a fact which was, of course, not conclusive.

The evidence in the case, exclusive of the testimony of the criminalist, made a strong case against appellant. The fact that a yellow truck of the same kind as that which he had in his possession for a few hours and during those hours was seen at the warehouse, and the fact that the stolen television sets were found in the garage that was used ʼby appellant, were of such convincing strength that the rather slight evidence relating to the tire marks is not critical.

The judgment is affirmed.

Christian, J., concurred.

**RATTIGAN, J.**—I dissent. It having been shown that police officers entered private premises without a search warrant, the burden rested upon the prosecution to show justification. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) As the justification claimed here was the parole officer's presence and participation, the prosecution was required to

show that the entry was "actually necessitated by the legitimate demands of the operation of the parole process." (*In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734] [quoted in full in the majority opinion].)

As I read the record, the police conceived the idea of searching the premises where appellant lived, the parole officer was "requested to assist" them, and he did. That he acted as a functionary of the parole system, however, can only be based upon speculation as to what he knew, suspected, or intended. Such speculation operates to relieve the prosecution of its obligation to show, by real evidence, that the entry of the garage was "actually necessitated by the legitimate demands of the operation of the parole process." Absent such real evidence, I conclude that the property seized in the garage was inadmissible for lack of a constitutionally requisite foundation. As it was indispensable to the prosecution's case against appellant, I would reverse the judgment.

A petition for rehearing was denied on April 30, 1970, and the following opinion was then rendered:

**THE COURT.**—On petition for rehearing, appellant makes a new contention, which was not presented in his original brief; that is, that appellant confessed at the police station, that the confession was coerced, and that the search was therefore fruit of the poisonous tree. Not only was the point not made on appeal; it was not made in the trial court. Appellant's statement was excluded from evidence despite testimony that a full *Miranda* warning was given, because appellant had said he would make a statement but would not sign it without an attorney. But there was no contention that the statement was a confession and when the court inquired of the district attorney as to its contents, the reply was that the statement contained just denials and an alibi.

Rattigan, J., is of the opinion the petition should be granted.

Appellant's petition for a hearing by the Supreme Court was denied June 10, 1970.