Liston F. Coon, J.
Arrested as a parole violator and since indicted for possession of a weapon discovered in the trunk of his automobile at the time of arrest, defendant seeks to suppress that weapon. The principal issue to be decided draws into play the co-operative efforts of officials of the Division of Parole and the Federal Bureau of Investigation leading up to and immediately following the arrest, and the effect of this cooperation upon the legality of the arrest and its contemporaneous search. Also involved is the claim by the Federal Government and concurred in by the court to limit the scope of the interrogation of Special Agent Gregg McCrary of the F.B.I.
The credible testimony reveals that on or about September 18, 1973, Agent McCrary, in possession of information to the effect that defendant might be on parole and indicative of possible violations thereof, particularly, consorting with known criminals, contacted one Vincent DeFilippis, an official of the New York State Division of Parole. DeFilippis, confirming defendant’s status as a parolee, set up an extended surveil *186 lance of his activities including those at the Alley Cat Tavern in the Borough of Manhattan, which surveillance lasted several months. Agent McCrary was present with DeFilippis on a number of occasions during this surveillance. McCrary’s role at this stage was in assisting DeFilippis to identify the persons with whom Santos was associating. Upon ascertaining these persons’ identities, McCrary provided DeFilippis with copies of their F.B.I.-compiled criminal records. He also provided DeFilippis with information gathered in the course of his own ongoing investigations into the activities of Santos’ associates, indicating that Santos might have a pistol in his automobile.
Ultimately a parole violation warrant was secured on April 30, 1974, and executed on May 1, 1974. The arrest took place following defendant’s exit from the Alley Cat Tavern and while he was driving his automobile. It is conceded that the arrest was desired to be made while defendant was operating the vehicle, with a view to making a search thereof. Upon effecting the arrest, DeFilippis searched the aiito’s interior, the glove compartment and the trunk, and discovered the weapon that is the subject of this hearing in the trunk. It was wrapped in a sweater and paper bag.
McCrary was present at the time of arrest. He stood by while DeFilippis and other parole officers effected the arrest and search. The court finds McCrary’s role in the arrest and search to have been that only of an interested spectator. He had no part in the decision to effect the arrest or the determination of when or where it might be made. DeFillipis alone decided to apply for the parole violation warrant, and DeFilippis alone decided the time and place of its execution.
Following his arrest, Santos was taken to the 17th precinct station house of the New York City Police Department. There, McCrary and another F.B.I. agent interrogated defendant for approximately 10 minutes in the absence of the parole officers.
Defendant contends that the arrest was instigated and engineered by the F.B.I. as a pretext for his subsequent F.B.I. questioning, and in order to provide McCrary with interrogation leverage which would have been unavailable had the arrest and search not taken place. The court is asked to rule that this alleged Federal abuse of New York’s machinery for detecting and apprehending State parole violators renders the arrest and search invalid. Upon the facts, and for the reasons set forth below, the court rejects this contention.
*187 The relevant authorities recognize that where an administrative warrant is readily obtainable against the subject of a law enforcement investigation, and where law enforcement lacks the probable cause necessary to secure a search or arrest warrant, or to effect a warrantless arrest, the temptation exists for police authorities to instigate an administrative arrest in the hopes of securing otherwise unavailable contraband or incriminating evidence as the incidents of such an arrest. The courts have soundly and properly condemned such sham or pretext arrests (Abel v United States, 362 US 217; United States v Hallman, 365 F2d 289; United States ex rel. Randazzo v Follette, 418 F2d 1319, 1323; People v Way, 65 Misc 2d 865; People v Coffman, 2 Cal App 3d 681). A pretext or sham administrative arrest for purposes of applying interrogation pressure upon an investigative suspect, where an opportunity for the intrusion would be otherwise unavailable, is no less to be condemned.
Not all administrative arrests and searches secured with the co-operation of police authorities are proscribed, however. Interagency co-operation not in derogation of constitutional rights is not only permissible, but laudatory. Defense counsel cites Lustig v United States (338 US 74) and Byars v United States (273 US 28) for the erroneous proposition that the search was tainted by the mere participation of a Federal officer in the State investigative process. The Lustig-Byars rule was a pre-Mapp doctrine aimed at preventing Federal circumvention of Fourth Amendment restrictions through the instigation of more flexible State-conducted searches. With Mapp, Lustig-Byars lost its raison d’etre (Mapp v Ohio, 367 US 643, 658; People v Way, supra, p 871). More than mere participation need be shown. Only those administrative arrests are prohibited which are instigated, initiated, directed, arranged, controlled and participated in by the police, and which have as their primary purpose not the ostensible administrative function, but the furtherance of police investigation in a manner designed so as to avoid the constitutional requirements of probable cause (People v Way, supra, p 871). Otherwise stated, the test is whether the decision to proceed administratively was influenced by, and was carried out for, an otherwise constitutionally impermissible law enforcement function (Abel v United States, supra, p 230).
The court’s task being to determine whether DeFilippis’ actions were properly directed toward the parole function, it is *188 appropriate at this point to briefly define the supervisory nature of parole and DeFilippis’ duties in aid thereof.
Parole is a suspension of the execution of a convicted felon’s sentence, temporarily releasing him from imprisonment on certain specified conditions. Parolees until the expiration of their sentences remain under the supervision of the Parole Board, subject to remand to prison if they violate their parole conditions (Correction Law, §§ 215, 216; Matter of Cummings v Regan, 76 Misc 2d 137, 141). To ensure that the parolee "will live and remain at liberty without violating the law,” and to ensure that a parolee’s release "is not incompatible with the welfare of society” (Correction Law, §213), the Division of Parole is charged by statute with the duty of supervising the parolee, "of making such investigations as may be necessary in connection therewith, of determining whether violation of parole or conditional release conditions exist * * * and of deciding the action to be taken with reference thereto” (Correction Law, §210). The very concept of parole entails a degree of supervision of parolees consonant with its purposes (People v Santos, 31 AD2d 508, affd 25 NY2d 976, cert den 397 US 969).
DeFilippis is an agent of the office of the Inspector General of the Division of Parole, which office is primarily concerned with investigations into possible parole violations. His duties include developing such information and following such leads as would aid his superiors in their determination of whether or not a parolee "has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect,” in order that they may take appropriate action to bring about the parolee’s reinstitutionalization (Correction Law, §216; People v Langella, 41 Misc 2d 65, 68).
Looking now at the Santos’ investigation, DeFilippis cannot be faulted for having initiated his investigation upon the receipt of information from McCrary. Law enforcement is a traditional and accepted informational source for parole violation investigations and reports (People v Simons, 22 NY2d 533, 539; President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections, p 69 [1967]).
Nor does the court see any impropriety in DeFilippis’ decision to conduct an extensive investigation of McCrary’s report, rather than moving the matter to a revocation proceeding *189 immediately. The Parole Board’s duty being to determine promptly and justly what action should be taken on the facts presented to it (People ex rel. Natoli v Lewis, 287 NY 478, 482), a knowledge of all the facts regarding Santos’ possible activities in violation of parole was not only desirable but necessary to a fair decision. DeFilippis was under an obligation, both to his superiors and to Santos, to satisfy himself as to the truth of McCrary’s information, to develop a more complete picture of Santos’ activities while on parole, to gather the relevant facts as fully as possible and to report them to the Parole Board (People v Langella, supra, p 69). The period between the initial lead from McCrary and the securing of the warrant for retaking was therefore not violative of the requirement of expediency in the retaking of a parolee (Correction Law, § 218; People ex rel. Lynch v Murphy, 284 App Div 1027, affd 308 NY 859; People ex rel. Lanza v Jackson, 7 AD2d 782).
DeFilippis’ use of McCrary’s assistance in identifying Santos’ associates and in providing the F.B.I.-compiled criminal records of such associates did not taint the parole violation inquiry, but was a sensible and proper utilization of a lawful investigative resource. The F.B.I. is a component of the United States Department of Justice (US Code, tit 28, § 531), which is headed by the Attorney-General (US Code, tit 28, § 503). The Attorney-General is charged by Federal statute with the duty of acquiring, collecting, classifying and preserving identification, criminal identification, crime and other records, and exchanging such records with and for the official use of authorized officials, not only of the Federal Government, but of the States and cities as well (US Code, tit 28, § 534; Weisberg v United States Dept. of Justice, 489 F2d 1195). It was, further, altogether sensible for DeFilippis and McCrary, each having an independent interest in observing the goings on in the Alley Cat Tavern, to share a joint observation post.
Under the Correction Law, if a parole officer has reasonable cause to believe that a parolee is in violation of the conditions of parole in an important respect, he shall report such fact to a superior in the Division of Parole, "who thereupon may issue a warrant for the retaking of such prisoner and his temporary detention or return to a designated prison”, pending a parole revocation hearing (Correction Law, § 216). This retaking provision has been consistently upheld (People ex rel. Natoli v Lewis, supra, p 481; United States ex rel. Randazzo v *190 Follette, 418 F2d 1319, supra; People v Simons, 22 NY2d 533, supra). DeFilippis complied with this procedure on April 30, 1974, and an administrative warrant for the retaking of Santos was issued on that date. This court cannot go behind the parole warrant to determine whether the information in DeFilippis’ possession at the time constituted reasonable cause (People ex rel. Natoli v Lewis, supra; United States ex rel. Nicholson v Dillard, 102 F2d 94, Jarman v United States, 92 F2d 309, 311; People v Langella, 41 Misc 2d 65, 70, supra).
Armed with this warrant, DeFilippis lawfully arrested Santos the following day (Correction Law, § 217). McCrary’s mere presence at this time did not vitiate the administrative arrest, since, as indicated, McCrary’s role at the time of arrest was that of a passive observer, with DeFilippis in complete control of the arrest and attendant search (Abel v United States, 362 US 217, 229, supra; United States ex rel. Randazzo v Follette, supra; People v Santos, 31 AD2d 508, supra).
The investigation and arrest having been directed by DeFilippis as a function of parole supervision and not as a sham or pretext for effecting F.B.I. purposes, McCrary’s postarrest interview with defendant was merely an incident of interagency co-operation, and of no effect upon the admissibility of contraband seized at the time of arrest. The United States Supreme Court considered an analogous situation in Abel v United States (supra, p 230), where an administrative deportation warrant of the Immigration and Naturalization Service was found to be employed not "as an instrument of criminal law enforcement to circumvent the latter’s legal restrictions, [but] * * * as a bona fide preliminary step in a deportation proceeding.” Mr. Justice Frankfurter, writing for the majority, said (p 229): "Nor does it taint the administrative arrest that the F.B.I. solicited petitioner’s cooperation before it took place, stood by while it did, and searched the vacated room after the arrest. The F.B.I. was not barred from continuing its investigation in the hope that it might result in a prosecution for espionage because the I.N.S., in the discharge of its duties, had embarked upon an independent decision to initiate proceedings for deportation.”
Turning now to the scope of the search effected at the time of arrest and which yielded the contraband here in issue, the court finds DeFilippis’ opening of the vehicle’s trunk and examination of its contents to have been a constitutionally reasonable search under the Fourth Amendment. Consistent *191 with the supervisory nature of parole, parole status works a diminution of the parolee’s Fourth Amendment protections. It involves a lesser expectation of privacy in the parolee’s affairs than enjoyed by ordinary citizens. It places upon the supervising authorities a positive duty to ensure that those permitted to serve their sentences outside the prison walls do not constitute a danger to the society into which they are released. Arrest for parole violation need be bottomed not on probable cause but on reasonable cause to believe a violation has occurred (Correction Law, §216). As a search is a "lesser intrusion” into a person’s liberty or privacy than an arrest (People v Perel, 34 NY2d 462), it would be illogical to require a stricter showing for a search than for an arrest. Parolees are thus subject to searches that would be impermissible in the ordinary situation, those that are lacking in probable cause, but which are reasonably called for as incidents of the Division of Parole’s powers of supervision and investigation.
The Federal courts, noting that the Constitution prohibits only unreasonable searches and seizures, have devised a balancing test to determine the permissibility of the parole supervisory intrusion, with the defendant’s status as parolee being a major factor for consideration. As the Second Circuit has stated: "A search which would be 'unreasonable’ if an ordinary citizen were involved, might be reasonable if directed against a parolee. It would be unrealistic to ignore the fact that parolees, as a class, pose a greater threat of criminal activity than do ordinary citizens.” (United States ex rel. Randazzo v Follette, 418 F2d 1319, 1322, n 7, supra; cf. Martin v United States, 183 F2d 436, cert den 340 US 904.)
The Southern District case of United States v Lewis (274 F Supp 184), cited by defense counsel, purports to accord parolees full Fourth Amendment protection, thus placing upon parole supervisors the onus of procuring a search warrant or consent, or having probable cause to search under exigent circumstances, in order to inspect a parolee’s residence or effects. The case is distinguishable in that the search therein was made not by a parole officer in the supervision of a parolee but by F.B.I. agents acting as Federal law enforcement officers, and the facts disclosed no particular basis for suspecting that the searched premises contained evidence of parole violations other than generalized suspicion due to the parolee’s past record.
Consistent with the Federal formula, every New York case *192 supporting a search of a parolee’s residence or automobile by a parole officer cites some information in his possession which, while it fell short of constituting the probable cause required for the search of an ordinary citizen’s property, indicated a reasonable suspicion that the undertaken search would reveal evidence of parole violations (People v Randazzo, 15 NY2d 526 [information that parolee trafficked in narcotics]; People v Santos, 31 AD2d 508, supra [information indicating parolee’s dealing in stolen goods]; People v Hunt, 38 AD2d 756 [unspecified special circumstances]; People v Langella, 41 Misc 2d 65, supra [search related to suspected parole violations]; People v Hingerton, 74 Misc 2d 1063 [tip indicating parolee’s engaging in sale of narcotics]; People v Thompson, 77 Misc 2d 700 [parolee’s contradictory stories to supervisors regarding use of vehicle and admission that it might contain a weapon]; cf. People v Chinnici, 51 Misc 2d 570 [anonymous tip that probationer had revolver]; cf. People v L'Hommedieu, 62 Misc 2d 925 [confidential information to probation officer]).
Other jurisdictions that have considered the question have generally followed this approach (accord: People v Denne, 141 Cal App 2d 499 [information that parolee was associating with narcotics trafficker]; People v Triche, 148 Cal App 2d 198 [reliable informer’s tip that parolee possessed narcotics]; People v Hernandez, 229 Cal App 2d 143 [informer’s tip that parolee might have narcotics]; see Matter of Martinez, 1 Cal 3d 641, 647, n 6; State v Williams, 486 SW2d 468 [Mo] [parolee’s statements to his supervisor and others that he used marijuana]; cf. State v Simms, 10 Wash App 75 [informer must be shown to be reliable]; contra: State v Cullison, 173 NW2d 533 [Iowa] [parole status works no dimunition of Fourth Amendment rights]).
In the analogous area of probation searches, the Legislature has codified the rule in CPL 410.50 (subd 3). The section authorizes the judicial issuance of search orders directing a search of a probationer’s person, his residence or the property in his possession, upon a showing of reasonable cause to believe that he has violated a condition of his sentence. This determination is grounded on the facts and circumstances of the case, weighed collectively (CPL 70.10, subd 2), with the individual’s status as parolee or probationer a major factor (People v Adams, 71 Misc 2d 658, 660). As stated in the Practice Commentary: "the test of what is reasonable as a prerequisite for search of the person or property of a proba *193 tioner or a parolee is whether the search is consistent with the duty to supervise adherence to the conditions of probation or parole and the duty to influence the offender to refrain from unlawful conduct” (Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 410.50, p 149).
In light of the above, DeFilippis’ search of the trunk of Santos’ vehicle was bottomed on the requisite reasonable suspicion that it would contain a weapon or evidence of parole violations. DeFilippis’ observations indicated that Santos had been associating with known criminals and that he had been regularly using the searched car, evidently without an operator’s license, a parole violation in itself. McCrary, an F.B.I. agent who had provided DeFilippis with useful leads into Santos’ activities, which had been confirmed by DeFilippis’ own surveillance, indicated that Santos might have possessed a weapon. These facts alone justified the opening and search of the trunk at the time of arrest. Remembering that the applicable standard is that of reasonable suspicion and not probable cause, no further showing is necessary as to the basis of McCrary’s information.
The examination of the trunk being thus permissible, this court does not reach the defense-raised questions of whether the search was effected as incident to arrest (Chimel v California, 395 US 752; People v Kreichman, 45 AD2d 697), was justifiable as an auto search under exigent circumstances (Chambers v Maroney, 399 US 42), or came within the category of police inventory inspections (People v Sullivan, 29 NY2d 69). Defense counsel further maintains that the certificate of release on parole which defendant executed as a condition of his release was a mere submission to authority, signed under duress and therefore inoperable as consent to the challenged search (see People v Sickler, 61 Misc 2d 571). The search being sustained as a constitutionally permissible exercise of the Division of Parole’s general powers of supervision and investigation and not as the product of consent, express or implied, the court does not reach the validity of the consent to search clause.
In the course of the hearing, the scope of Agent McCrary’s testimony and of the production of his surveillance logs were limited to his surveillance of Santos.* The Department of *194 Justice, claiming privilege in that complete disclosure of Mc-Crary’s surveillance log would reveal confidential information relating to ongoing law enforcement investigations and expose the identities of possible informants, provided the defendant with redacted portions of the surveillance log and furnished the court with the complete log for in camera inspection. The redacted material was found to relate only to other named individuals in no way connected to the defendant.
Defendant maintains that this procedure violated his rights of confrontation and effective counsel (US Const, 6th Amdt) in that the withheld information might have shed light upon F.B.I. motives to instigate the parole violation arrest and upon the source of McCrary’s information that Santos possessed a weapon.
This contention is without merit. The Federal Government has made out a valid showing of privilege (People v Rossi, 30 NY2d 936; Jacoby v Delfiner, 183 Misc 280, affd 270 App Div 1013; Matter of Clark v Flynn, 9 AD2d 249, 251; Roviaro v United States, 353 US 53, 60; Richardson, Evidence [10th ed], § 456). In such a case disclosure of confidential information would be constitutionally incumbent upon the trial court’s discretion only upon a strong showing of relevance to defendant’s cause, which showing has not been made (People v Goggins, 34 NY2d 163, 169; McCray v Illinois, 386 US 300, 304-308; United States v Lopez, 328 F Supp 1077, 1090-1091). The administrative arrest and search having been lawfully made upon the initiative of the Division of Parole and not as a mere pretext for effecting F.B.I. purposes, testimony or documents relating to the background of the Federal investigation are irrelevant to the issues posed at this hearing. Nor must the source of McCrary’s information that Santos might possess a weapon be disclosed. The privilege of confidentiality should prevail when an informant "has played a marginal part by, for instance, merely furnishing a tip or some information to the police” (People v Goggins, supra, p 170). This is especially so where the only issue concerned is whether there was reasonable cause to believe a parole violation had occurred. The Federal Government has lawfully withheld its privileged information (28 CFR 16.21-16.26; Touhy v Ragen, 340 US 462), and no cognizable constitutional violation has been worked thereby.
*195 The motion to suppress is denied in all respects.

 It should be here pointed out that the agent was called as a witness by the defense and his testimony was in no way impeached. Defendant attempted to characterize McCrary as hostile to his cause. There was, however, no direct or *194 positive showing of hostility (Richardson, Evidence [10th ed], §§ 483, 503, 513; Potter v Browne, 197 NY 288; Schultz v Third Ave. R. R. Co., 89 NY 242, 250).